144 N.J. Super. 358 (1976)
365 A.2d 720
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GAIL ANGLADA AND ELTON MARTIN ANGLADA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1976.
Decided October 26, 1976.
*360 Before Judges BISCHOFF, MORGAN and COLLESTER.
Mr. Edward K. Zuckerman argued the cause for appellants (Messrs. Rosenhouse, Cutter & Zuckerman, attorneys).
Mr. Peter S. Hamerslag, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MORGAN, J.A.D.
Defendants appeal their convictions of possession of under 25 grams of marijuana (N.J.S.A. 24:21-20(a) (3))[1] and growing marijuana (N.J.S.A. 2A:170-25.1), contending that their motion to suppress evidence of marijuana was erroneously denied.
The evidence adduced at the hearing on the motion disclosed that two narcotics investigators, pursuing a matter unconnected with either defendant, and attempting to ascertain the identity of occupants of a certain house, went to the local mayor's house for assistance. One of the defendants, later discovered to be the mayor's husband, answered the door. Because of the nature of his attire, and unaware at the time that the man was the mayor's husband, the investigators chose not to reveal their identities as law enforcement officials. Rather, after having been invited into the house to await the return of the mayor, they suggested to defendant that they were interested in purchasing a home in the immediate locale. During the course of the ensuing conversation inside defendants' home, defendant husband made several statements about the use of marijuana in the home by himself and his wife, and the general use of marijuana throughout the municipality. The investigators observed a pipe and rolling papers on the living room table in plain view. When the mayor returned home, the conversation *361 continued and the investigators pursued their assumed roles because of the information imparted by the mayor's husband and the evidence of marijuana use they had observed.
About eight days later, on July 10, 1974, one of the investigators, this time equipped with a concealed recording device, again visited defendants' home, again in the same assumed role. She was again invited into the home by defendant husband and once inside observed green vegetative matter which she believed to be marijuana. On speaking a prearranged code word, other investigators entered the home and arrested defendant who, at the time of his arrest, was found smoking a marijuana cigarette. A search warrant was then obtained and a full scale search of defendants' home ensued. The marijuana plant was seized as a result of this warranted search. The codefendant wife arrived home shortly thereafter, and she was also arrested and charged.
Defendants contend, in substance, that their consent to the entry of the investigators into their home, procured as it was by deception, cannot be viewed as consent, and that the intrusion, unsupported by a duly issued warrant, and otherwise without probable cause, ran afoul of Fourth Amendment guarantees. Defendants' contentions in this regard are without merit.
Several aspects of the testimony deserve emphasis. First, until the search warrant issued following the investigators' second visit to defendants' home, no search, within the normal meaning of that term, took place. A search implies some exploratory investigation and prying into hidden places for that which is concealed. State v. Griffin, 84 N.J. Super. 508, 517 (App. Div. 1964). No activity of that kind preceded issuance of the warrant.
Second, defendant husband invited the investigators into his home, albeit under a misconception of who they were. Here it must be noted that the investigators were unknown to defendant; whatever their representations as to their identity, defendant was free to deny them entry. Defendant *362 husband placed trust in these strangers and in what they represented themselves to be, to the extent that he permitted incriminating evidence to be exposed to their unobstructed view and made incriminating statements in their presence. Basic to defendants' contention is the view that occupants of a home must be warned that it is law enforcement officials seeking entry therein, so that all evidence of criminal behavior can be concealed forthwith. This contention appears unsupported by law.
In Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), a government informer, also a friend of defendant, was present, with defendant's knowledge and his consent, during discussions of jury tampering conducted in defendant's hotel suite. Defendant's contention that the testimony of his duplicitous friend concerning the substance of these conversations was inadmissible because his consent to the informant's presence in the hotel room was obtained by deceit; according to defendant, the testimony was obtained as a result of an illegal search. This argument was found to be without merit. The informer was in the hotel suite by invitation, not by stealth or by force; nor was he a surreptitious eavesdropper.
The [defendant], in a word, was not relying on the security of the hotel room; he was relying upon his misplaced confidence that [the informer] would not reveal his wrongdoing. Id. at 302, 87 S.Ct. at 413.
In Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), a federal narcotics agent misrepresented himself to the defendant as an interested buyer of marijuana. On two separate occasions he was invited to defendant's home and there made purchases. Defendant contended that, in the absence of a warrant, any official intrusion into the privacy of his home constituted violation of Fourth Amendment guarantees; the invitation, and the consent evidenced thereby, was vitiated by the deceit engaged in to procure it. This contention, too, was held to be without substance, *363 the Supreme Court, through Chief Justice Warren, holding that the deceit used to induce consent to the entry did not render the entry unlawful.
Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), relied upon by defendants, is inapposite and was distinguished in Lewis v. United States, supra. In Gouled, after using deceit and ruse to gain entry to defendant's office, the intruder ransacked the office in defendant's absence. It was this later search which was condemned in Gouled, not the original entry for which consent, deceitfully obtained, had been given. Id. at 306, 41 S.Ct. 261.
State v. Johnson, 68 N.J. 349 (1975), is not to the contrary. There it was the police who conducted an unwarranted search, later sought to be justified on the basis of consent. The court, in such circumstances, held that proof that defendant had knowledge of his right to refuse the search was an essential element of consent.
Many persons, perhaps most, would view the request of a police officer to make a search as having the force of law. Unless it is shown by the State that the person involved knew that he had the right to refuse to accede to such a request, his assenting to the search is not meaningful. One cannot be held to have waived a right if he was unaware of its existence. [at 354]
Here, defendant did not know that the intruders were police officers; indeed, that lack of knowledge is central to their argument. Consequently, they knew that they did not have to consent to their entry. They chose to permit strangers to enter their home and chose to confide their unlawful activities to these total strangers. Their exposure resulted, not from violation of principles pertaining to the sanctity of their home, but rather from their misplaced trust in persons about whom they knew nothing. Neither the Fourth Amendment nor the analogous provision of the New Jersey Constitution (N.J.S.A. Const. (1947) Art. I, par. 7) provides them with protection in those circumstances.
Affirmed.
NOTES
[1] Now N.J.S.A. 24:21-20(a)(4).