731 A.2d 1225

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. WILLIAM FERRARI, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 2, 1999—Decided July 9, 1999.

Before Judges LONG, WEFING and CARCHMAN.

*Sharon Piper*, Assistant Camden County Prosecutor, argued the cause for appellant (*Lee A. Solomon*, Camden County Prosecutor, attorney; *Ms. Piper*, of counsel and on the brief).

*Francis J. Hartman* argued the cause for respondent (*Hartman & Zamost*, attorneys; *Deirdre K. Hartman*, on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

The State appeals, pursuant to leave granted, from an interlocutory order of the trial court granting defendant's motion to suppress. We reverse and remand for further proceedings.

There was no factual dispute between the parties about what occurred. Defendant rented condominium unit # 525 in a complex known as Kings Croft. James Escoti lived in unit # 524. During the week of May 4, 1998, Escoti contacted the Cherry Hill Police Department. He complained of people arriving and departing from # 525 at late hours and of profanity, loud music and loud vehicles. He told the police that a number of vehicles stopped at # 525 for short periods of time.

In response to Escoti's complaints, the Cherry Hill Police Department directed Detective Thomas Riddle and Officer Andrea Leone to place the unit under surveillance. On the evening of May 6, 1998, Riddle and Leone observed # 525 for approximately one and one-half hours. In that time span, they witnessed four different vehicles pull up in front of # 525; on each occasion, the driver stayed in the car with the engine running while a passenger got out, went into # 525, and departed a few minutes later. Riddle and Leone also noticed a sign posted in a front window of # 525 indicating that the unit was listed for sale with a local agency.

On May 8, 1998, Riddle and Leone approached the real estate agent. They did not disclose that they were police officers. Rather, they introduced themselves as husband and wife and stated that they were interested in purchasing a condominium in

the area. The agent showed them # 525 to see if it would satisfy their needs. The agent accompanied Riddle and Leone during their tour of the unit. During that tour, the officers observed a small quantity of marijuana in plain view in the area of the downstairs bar.

The record does not disclose whether defendant was present during the officers' visit to # 525. We do not consider that fact critical to our analysis, however, because defendant admitted to the trial court during the argument on his motion that defendant knew that his home would be open to inspection by prospective purchasers.

Riddle and Leone did not seize the marijuana, and they left the unit without incident. They prepared an affidavit and applied for a search warrant. In that affidavit, the officers set forth Escoti's complaints, their surveillance observations, and an account of their tour of # 525. The warrant was issued on May 8, 1998. The police executed the warrant that evening and found a small quantity of marijuana in the same location. Defendant admitted ownership of the marijuana.

The trial court, relying on *State v. Hempele*, 120 *N.J.* 182, 576 *A.*2d 793 (1990), ruled that the affidavit's information concerning the officers' direct observation of the marijuana was improperly obtained as a result of a warrantless search. The court concluded that the officers' tour of # 525 violated defendant's reasonable expectation of privacy. We disagree.

In *Hempele*, the Court concluded that an individual possesses a reasonable expectation of privacy in the garbage placed for collection. *Hempele, supra*, 120 *N.J.* at 198–215, 576 *A.*2d 793. The court declared that while the police may seize the container of garbage, they may not search that container without first obtaining a warrant based upon probable cause. *Id.* at 215–21, 576 *A.*2d 793. Throughout the course of its opinion, however, the Court stressed the packaging of the trash. It repeatedly noted that the trash had been placed in "opaque" bags, which concealed the bags' contents from plain view. *Id.* at 203, 208, 210, 215, 576 *A.*2d 793.

Further, it identified the "critical issue [as] whether the container conceals its contents from plain view." *Id.* at 203, 576 *A.*2d 793.

Here, however, defendant made no attempt to conceal the marijuana from the view of the real estate agent and Riddle and Leone. We underscore that Riddle and Leone did not discover the marijuana by opening closets or drawers in the course of their tour of # 525; indeed, they carefully refrained from doing so. Rather, the marijuana was in full view for all those who entered the room to see.

We consider this matter analogous to the situation presented in *State v. Anglada,* 144 *N.J.Super.* 358, 365 *A.*2d 720 (App.Div.1976). In that case, narcotics investigators, pretending to be interested in purchasing a home in the area, were invited by defendant into his home on two occasions. *Anglada, supra,* 144 *N.J.Super.* at 360–61, 365 *A.*2d 720. Each time, narcotics paraphernalia was openly displayed, and defendant spoke freely of his use of the drug. *Ibid.* Based upon their observations, the investigators obtained a search warrant. *Id.* at 361, 365 *A.*2d 720. When the warrant was executed, contraband was seized. *Ibid.* Defendant moved to suppress that evidence, arguing that it was tainted as a result of the officers' deception. *Ibid.*

This court upheld the trial court's denial of the motion to suppress. *Id.* at 361–63, 365 *A.*2d 720. We noted that until the warrant was obtained, "no search, within the normal meaning of that term, took place. A search implies some exploratory investigation and prying into hidden places for that which is concealed. No activity of that kind preceded issuance of the warrant." *Id.* at 361, 365 *A.*2d 720. Similarly, we rejected the argument that the evidence should be suppressed because defendant misperceived the true identity of his visitors. *Id.* at 362–63, 365 *A.*2d 720.

Other courts have considered, with varying results, the constitutional implications of evidence obtained as a result of police deception. Some courts have drawn a distinction between situations in which the police obtained entry by expressly misrepresenting their purpose and situations in which there was no active

deceit. *See, e.g., State v. Taub,* 47 *Ohio App.*3d 5, 547 *N.E.*2d 360, 362–67 (Ct.App.1988). *But see Lewis v. United States,* 385 *U.S.* 206, 87 *S.Ct.* 424, 17 *L.Ed.*2d 312 (1967) (upholding the admissibility of marijuana obtained by an undercover police officer who misrepresented his identity to obtain access to defendant's home to complete a narcotics transaction.) The *Lewis* Court noted that "the particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception." 385 *U.S.* at 208, 87 *S.Ct.* at 426, 17 *L.Ed.*2d at 315. *See generally* Joan Teshima, Annotation, *Officer's Ruse to Gain Entry as Affecting Admissibility of Plain–View Evidence—Modern Cases,* 47 A.L.R.4th 425 (1986).

We find *United States v. Garcia,* 997 *F.*2d 1273 (9th Cir.1993), and *State v. Poland,* 132 *Ariz.* 269, 645 *P.*2d 784 (1983) particularly persuasive. In *Garcia,* two investigators, pretending to be prospective renters of an apartment, engaged defendant and his compatriot in conversation. *Garcia, supra,* 997 *F.*2d at 1276–77. The investigators were standing outside the apartment but could clearly see Garcia handling a "kilo-sized" package wrapped in tape. *Id.* at 1277. They were not on public property. The court refused to suppress the subsequently seized narcotics on the basis that

the officers' ruse did not cause Garcia to reveal the package of cocaine. He did that on his own.... [H]e made no attempt to conceal the package of cocaine. The inescapable inference is that he did not care whether the persons standing on the back porch, who he thought were potential renters, saw what he was holding.... [H]e had no expectation of privacy in the package he so cavalierly displayed.
[997 *F.*2d at 1280.]

Here, the actions of Riddle and Leone did not cause defendant to display the marijuana. He left it out, plainly visible to all who entered.

In *Poland, supra,* two brothers were charged with two counts of first-degree murder. *Poland, supra,* 645 *P.*2d at 788. The residence of one of the brothers was listed for sale. *Id.* at 792. A police officer, posing as a prospective purchaser, entered the home and observed items connecting defendants to the crime. *Ibid.*

Based on those observations, the officer sought and obtained a search warrant. *Ibid.* The court refused to suppress the evidence obtained pursuant to that warrant. *Ibid.* In reaching its decision, the court wrote:

> The government is entitled to use decoys and to conceal the identity of its agents[,] and law enforcement officers may pose as potential buyers to investigate illegal firearms or narcotics. . . . [T]he agent is limited to conduct which would be normal for one adopting the disguise used in seeking entry.

> [*Ibid.*]

The *Poland* court rejected the defendants' argument that the agent's entry into the home was illegal because the agent had a different purpose in entering the home than defendant did in permitting the entry. *Id.* at 792–93. The court explained:

> The distinction . . . between permissible and impermissible intrusions [obtained by ruse] turns on what the suspect, as a result of the agent's deceit, has chosen to show the one entering the premises . . . '[T]he Fourth Amendment protects people not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'

> [*Id.* at 793 (quoting *Katz v. United States,* 389 *U.S.* 347, 351, 88 *S.Ct.* 507, 511, 19 *L.Ed.*2d 576, 582 (1967)).]

The actions of Riddle and Leone did not exceed what one would expect of a prospective purchaser. Indeed, by refraining from opening closets and drawers, they did even less. Their actions violated no reasonable expectation of privacy possessed by defendant. "There is no right to escape detection." *State v. McKnight,* 52 *N.J.* 35, 52, 243 *A.*2d 240 (1968).

The order granting defendant's motion is reversed, and the matter is remanded to the trial court for further proceedings.