# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### OCTOBER 5, 2000 Session

## DAVID ROBERTS v. ESSEX MICROTEL ASSOCIATES, II, L.P. d/b/a/ MICROTEL-KINGSPORT, ET AL.

### Appeal from the Circuit Court for Sullivan County
### No. C-32311    Hon. Richard E. Ladd, Chancellor

### FILED NOVEMBER 27, 2000

### No. E2000-01356-COA-R3-CV

Plaintiff registered as a guest at Defendant's hotel. For various reasons, the desk clerk asked to see Plaintiff's driver license. Plaintiff produced his driver license for inspection by the desk clerk. For those same reasons, the desk clerk later telephoned the police. She provided the 911 police dispatcher with certain information from Plaintiff's driver license. With this information, the police discovered that an individual with the same date of birth and a similar name was wanted in Florida on a narcotics trafficking charge. The police came to the hotel, questioned Plaintiff, and then took Plaintiff into custody. After detaining Plaintiff at the police station for two hours, the police determined that Plaintiff was not the suspect wanted in Florida and returned Plaintiff to the hotel. Plaintiff sued the hotel owner and the desk clerk for malicious prosecution, wrongful arrest, false imprisonment and invasion of privacy, but later proceeded only on the invasion of privacy and false imprisonment counts. The Trial Court granted Defendants' Motion for Summary Judgment. We affirm.

### Tenn. R. App. 3; Judgment of the Circuit Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., joined. CHARLES D. SUSANO, JR., J., filed a concurring in part and dissenting in part opinion.

Larry V. Roberts, Kingsport, Tennessee, for the Appellant David Roberts.

H. Wayne Graves, Johnson City, Tennessee, for the Appellee Essex Microtel Associates, II.

## OPINION

## Background

On the evening of February 10, 1997, Plaintiff, David Allan Roberts, registered as a guest at Microtel-Kingsport, a hotel owned and operated by Defendant, Essex Microtel Associates, II ("Microtel"). Defendant Carmen Allen was the desk clerk at the hotel and was the only employee on the premises. Plaintiff completed the registration card, providing his name and address. Ms. Allen asked Plaintiff for his driver license, which he willingly provided. Ms. Allen testified that when she made a photocopy of the license, Plaintiff became disgruntled and allegedly commented to the effect that he supposed Ms. Allen had copied his driver license so that she could call "the authorities" and tell them his whereabouts. Plaintiff testified that he was joking. He also testified that he was unaccustomed to having his driver license photocopied when registering at hotels. Microtel's general manager testified that, indeed, it was not Microtel's policy to photocopy driver licenses unless the registering guest paid with cash.[1] In this case, however, Ms. Allen thought Plaintiff was very rude and his behavior strange. Plaintiff neither used profanity nor physically or verbally threaten Ms. Allen, but she thought he was unusually angry. Ms. Allen testified that she was concerned for the safety and welfare of the other guests. After Plaintiff left the registration area and went to his room, Ms. Allen telephoned the Kingsport Police Department. Although it was Microtel's policy not to disclose personal information obtained from guests during check-in, she ignored that policy in this instance because she thought Plaintiff was acting strange. She told the police dispatcher that she had checked in a person who was acting strange, and provided the dispatcher with Plaintiff's name, address, date of birth, height, weight, eye color and Virginia driver license number, which is also his social security number.

When the police department received the call, the dispatcher checked police identification sources and learned that a person by the name of Allen Roberts, with the same date of birth and fitting Plaintiff's general physical description, had criminal charges involving narcotics trafficking outstanding in Florida. The recorded 911 call reveals that the police dispatcher commented to Ms. Allen, "That'd be neat if we could find him, wouldn't it? I mean, we've found him already, but if he is wanted. You could say, 'Well, you'll learn to make smart ass remarks to me.' " Ms. Allen replied, "Really. I mean really he was really, really rude and I just thought you know."

The Kingsport Police Department dispatched two uniformed officers to the hotel to investigate whether Plaintiff was the suspect wanted in Florida. The police officers went to Plaintiff's room and knocked on the door. Plaintiff voluntarily admitted the officers to his room and cooperatively answered their questions about whether he had ever lived in Florida. When they confirmed that his physical description matched that of the suspect and learned that he once had lived in Florida, they placed him in handcuffs and took him to police headquarters in a police cruiser. Two hours later, after the Florida authorities faxed a fingerprint of the suspect to Kingsport Police and it did not match Plaintiff's fingerprint, the police officers concluded that Plaintiff was not the Florida suspect and took him back to the hotel. Ms. Allen, who was still on duty at the registration desk at

---

[1]The photocopying of driver licenses for cash customers was done so that the customer could be located in the event he caused loss or damage to the room.

the hotel, telephoned Plaintiff's room and apologized to Plaintiff for the inconvenience. Plaintiff told her that he intended to contact his attorney about the incident. Ms. Allen testified that she then became upset because she had not intended for Plaintiff to be arrested.

Plaintiff filed this suit in Sullivan County Circuit Court, seeking compensatory and punitive damages against Microtel and Ms. Allen for malicious prosecution, wrongful arrest, false imprisonment and invasion of privacy. Microtel answered that any responsibility for negligence, wrongful arrest, or invasion of privacy would lie with the Kingsport Police Department. Microtel further answered that the Complaint failed to state a claim upon which relief could be granted, and asked that it be dismissed. A pretrial conference was held on June 25, 1999. On October 12, 1999, Defendants filed an Alternative Motion to Dismiss or for Summary Judgment, accompanied by the affidavits of the two Kingsport Police Officers[2] and a Memorandum of Law. On December 13, 1999, Plaintiff filed a Response, accompanied by a transcript of the police dispatch recording, the affidavit of the dispatcher attesting that the transcript was accurate, and a Memorandum of Law. The Motions were heard by the Trial Court on December 10, 1999, at which time Plaintiff announced that he intended to proceed only on his theories of invasion of privacy and false imprisonment. After reviewing the record, including the depositions of Plaintiff, Defendant Ms. Allen and the Microtel General Manager, and hearing arguments of counsel, the Trial Court found that there were no genuine issues as to any material fact and that Defendants were entitled to judgment in their favor as a matter of law. Plaintiff's Complaint was dismissed.

## Discussion

Plaintiff appeals the judgment of the Trial Court and raises these issues:

1.   Has Tennessee adopted the common law invasion of privacy tort as set forth in Restatement 2d Torts, § 652 A, B, C, D, E and H; specifically § 652 B.

2.   If the answer to issue 1 is "yes", did the Trial Court err in finding no genuine issue of material fact to support the Plaintiff's claim for invasion of privacy under Restatement 2d Torts, § 652 B?

3.   If the answers to issues 1 and 2 are both "yes", what damages is the Plaintiff entitled to recover for invasion of privacy?

4.   Did the Trial Court err in finding no genuine issue of material fact to support the Plaintiff's claim for false imprisonment?

[2]Although the two officers stated that Plaintiff was not under arrest at the time he was taken to police headquarters, the Trial Court struck those paragraphs from the affidavits because it is undisputed that Plaintiff was handcuffed by the police, placed in a police cruiser, and taken to the police station for questioning.

The standards governing an appellate court's review of a motion for summary judgment are well settled:

Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see, Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer,* 952 S.W.2d 423. 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.[3]

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a

---

[3] A non-moving party may satisfy his or her burden by (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) by rehabilitating the evidence attacked in the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in Tenn. R. Civ. P. 56.06. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Byrd v. Hall,* 847 S.W.2d at 215, n. 6.

-4-

reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000).

Plaintiff first raises the issue of whether Tennessee has adopted the common law invasion of privacy tort as described in the Restatement 2d Torts § 652 B. Plaintiff argues that if the tort is cognizable in Tennessee, then there are genuine issues of material fact requiring a trial on the issue of whether Defendants are liable to him for invasion of privacy under § 652 B, which provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
> Comment:
>
> A. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.
>
> B. The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.
>
> C. The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of

documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.

D. There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement (Second) of Torts § 652 B (1977).

Plaintiff asks this Court, "[s]ince it is unclear if the common law of invasion of privacy tort has been formerly adopted in Tennessee, the Plaintiff requests a determination as to whether the tort is recognized by Tennessee courts." We hold that Tennessee has adopted the common law tort of invasion of privacy.

The Tennessee Supreme Court, in *Martin v. Senators, Inc.,* 220 Tenn. 465, 418 S.W.2d 660 (1967), considered the issue of whether invasion of privacy was an actionable tort in this jurisdiction. The *Martin* Court cited *Langford v. Vanderbilt University,* 199 Tenn. 389, 401, 287 S.W.2d 32 (1956), in which our Supreme Court "assumed" the existence of the common law tort of invasion of privacy and held that, in that case, it had been waived. Applying *Langford,* our Supreme Court in *Martin* also assumed the existence of the common law tort, and again found waiver. This Court then considered the same issue in *Alley v. Cleveland,* No. 03A01-9605-CV-00160, 1996 Tenn. Ct. App. WL 605157, at *1 (Oct. 23, 1996). In that case, we held that, while the Tennessee Supreme Court in both *Martin* and *Langford* had ". . . 'assumed' the action existed at common law, the cases did not 'assume without deciding the issue.' " *See also, Tidman v. Salvation Army,* No. 01A01-9708-CV-00380, 1998 Tenn. Ct. App. WL 391765, at *2 (July 15, 1998) ("Although the Tennessee courts earlier recognized the tort of invasion of privacy, *Martin v. Senators, Inc.,* 220 Tenn. 465, 418 S.W.2d 660 (Tenn. 1967), this court more recently adopted Sec. 652A of the Restatement (Second) of Torts as the basis for the action."); *Parr v. Middle Tennessee State University,* No. M1999-01442-COA-R3-CV, 1999 Tenn Ct. App. WL 1086451 at *2, (Dec. 3, 1999) (". . . Tennessee courts do recognize a cause of action for invasion of one's privacy by another citizen.")

Having determined that Tennessee recognizes the tort of invasion of privacy, we next address the issue of whether there are genuine issues of material fact requiring a trial on the issue of whether Defendants are liable to Plaintiff for invasion of privacy. Plaintiff argues:

> Defendant "Microtel" intentionally, through the actions of its check-in clerk, Defendant Carmen Allen, undertook and conducted an investigation into the private affairs of the Plaintiff, which resulted in the Plaintiff being handcuffed, arrested and imprisoned.
>
> * * *
>
> Although the Plaintiff willingly provided "Microtel" all information requested by Defendant Carmen Allen, the Plaintiff did not use profanity, and the Plaintiff did not physically or verbally threaten anyone when he checked in at the hotel.
>
> Defendant Carmen Allen telephoned the Kingsport Police Department approximately one (1) hour after the Plaintiff checked in and agreed with the dispatcher it would be "neat" to find something on the Plaintiff so she could tell the Plaintiff "you'll learn to make smart ass remarks to me."
>
> As a result of Defendant Carmen Allen telephoning the police, the Plaintiff was arrested, handcuffed and imprisoned for approximately two (2) hours at the Kingsport Police Department.
>
> Genuine issues of material fact exist as to whether the "Microtel" check-in clerk's conduct was reasonable, when the Plaintiff checked in at the hotel. Therefore, summary judgment is inappropriate.

This Court recently addressed a similar factual situation in *Mays v. Fred's, Inc.,* No. W1999-02189-COA-R3-CV, 2000 Tenn. Ct. App. WL 53082, Jan. 10, 2000. In that case, Mays sued Fred's, Inc., after Mays visited Fred's store to purchase a flashlight and was detained by the store security guard, who suspected that Mays had shoplifted. The security guard detained Mays for thirty minutes while he called the police, who then escorted Mays to a private room in the back of the store, required her to fully undress, and searched her for stolen merchandise. None was found, and it was later determined that a theft sensor tag had stuck to the bottom of Mays' shoe. Mays brought suit for false imprisonment, outrageous conduct, intentional infliction of emotional distress and invasion of privacy. Fred's argued that the summary judgment in its favor was proper because the store was not legally responsible for the two hour detention that culminated in Plaintiff's being strip-searched. Fred's had detained Mays for thirty minutes, and officers of the Memphis Police Department, rather

than Fred's employees, were responsible for holding Mays for the remainder of the time, and for conducting the strip-search. In short, Fred's argued that even if reasonable minds could differ as to whether the detention and strip-search of Mays was reasonable, Fred's still was not liable because its employees did not cause the detention or the strip-search. Mays, on the other hand, asserted that the detention, although conducted by the police officers, was done at the insistence of Fred's store manager. The trial court granted Fred's motion for summary judgment. We affirmed, holding that Fred's in that case could not be held liable for the two hour detention and strip-search of Mays:

> While one cannot help but sympathize with Ms. Mays, taking her deposition testimony as true and casting all inferences in her favor leads us to the conclusion that summary judgment was properly granted in favor of Fred's. At the most, Fred's store manager provided information to the police officer which led the police to conduct the strip search. However, as the Appellee points out, merely providing information to a police officer will not render that person liable. *Hertzka v. Ellison*, 8 Tenn. App. 667 (Tenn. Ct. App. 1928). Simply put, even if it were determined that the detention and strip-search were unreasonable, there is no factual basis upon which to conclude that Fred's is responsible.

*Mays v. Freds, Inc.,* No. W1999-02189-COA-R3-CV, 2000 Tenn. Ct. App. WL 53082 at *3, Jan. 10, 2000.

Microtel's employee, Ms. Allen, copied Plaintiff's driver license, telephoned the police, provided the information on the license to the police, and advised them of her concerns about Plaintiff's acting strange. At oral argument before this Court, although not in his appellate brief, Plaintiff conceded that, if Defendants had merely telephoned the police without first copying Plaintiff's drivers' license, Plaintiff would not have a cause of action for invasion of privacy. Plaintiff argues that the invasion of privacy which led to the allegedly unreasonable action of the police department was Ms. Allen's act of copying his driver license. However, the Restatement 2d of Torts comment explains:

> C. The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection.

Restatement (Second) of Torts § 652 B (1977).

Plaintiff is required to carry a driver license while driving, as are all drivers. Driver licenses are routinely made available for public inspection, for example, when cashing a check or writing a check for purchases or when paying cash at Microtel's hotel. Plaintiff does not contend that he keeps his driver license private in such instances. In fact, Plaintiff testified that he willingly provided his driver license to Ms. Allen. It apparently is the copying of his license, which contained his social security number, and providing that information to the police which Plaintiff finds offensive. Having "willingly" furnished his driver license to Ms. Allen, Plaintiff cannot now claim Defendants ". . . invaded a private seclusion that the [P]laintiff has thrown about his person or affairs." We note that Plaintiff's social security number played no part in his arrest as the factual information resulting in Plaintiff's arrest after questioning by the police was his birth date, his name, his physical appearance, and the fact that he had lived in Florida.

While there are disputes of fact in this record, such as whether Plaintiff was "joking" or acting "strange" when he checked into the hotel, those disputed facts are not material to Plaintiff's cause of action for invasion of privacy. Ms. Allen furnished the police information willingly provided by Plaintiff to her. As held by this Court in *Mays*, ". . . merely providing information to a police officer will not render that person liable." *Mays* at *5. Plaintiff "willingly" provided the information to Ms. Allen and Ms. Allen conveyed that information to the police. Everything that happened from that point forward was done by the police and not Defendants. In short, while Tennessee does recognize the tort of invasion of privacy, the Trial Court properly held that there is no genuine issue as to any material fact and that the Defendants are entitled to a judgment as a matter of law on Plaintiff's claim of invasion of privacy.

Plaintiff also raised the issue in his appellate brief that there were genuine issues of material fact as to whether Defendants were liable for the tort of false imprisonment. Ms. Allen testified that, when she telephoned the police, she did not know that Plaintiff would be arrested and did not intend for him to be arrested. She did not know that a person with a similiar name with the same birth date was wanted in Florida. When Plaintiff returned to the hotel after being taken to the police station and questioned, Ms. Allen telephoned his room and apologized for the inconvenience. She was upset because he had been arrested. Her testimony on these points is undisputed. The elements of the tort of false imprisonment are (1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint. *Newsom v. Thalhimer Bros., Inc.,* 901 S.W.2d 365, 367 (Tenn. Ct. App. 1994). Defendant did not detain or restrain Plaintiff. Citing once again to this Court's Opinion in *Mays*, ". . . merely providing information to a police officer will not render that person liable." *Mays* at *5. This issue is without merit, and the decision of the Trial Court is affirmed.

### Conclusion

The judgment of the Trial Court is affirmed. This cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. Costs on appeal are assessed against the Appellant, David Roberts and his surety.

_____
D. MICHAEL SWINEY, JUDGE