IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 25, 2011 Session

## JOE BURNETTE, Individually and Next Friend of Sons, JOSHUA BURNETTE, AND JACOB BURNETTE v. JOEL PORTER, JR., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-002024-08      Robert L. Childers, Judge

No. W2010-01287-COA-R3-CV - Filed September 30, 2011

This is an appeal from a grant of summary judgment in favor of Appellees on claims of invasion of privacy by intrusion upon seclusion, and conspiracy to commit that tort. Appellees were invitees, and there is no evidence that they exceeded the scope of the invitation despite the fact that Appellees had ulterior motives in procuring admission. Appellants failed to show that Appellees' actions were objectionably unreasonable or highly offensive, which are essential elements of the invasion of privacy tort. Furthermore, in the absence of an underlying tort, there can be no conspiracy to commit the tort. Affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Stephen R. Leffler, Memphis, Tennessee, for the appellant, Joe Burnette.

Richard Glassman and Edwin E. Wallis, III, Memphis, Tennessee, for the appellees, Joel Porter, Jr., Beth Porter, Scott Ferguson, Ben Ferguson, and Maurie Baker.

## OPINION

Joe Burnette is married to Michelle Burnette. They have two teenaged sons, Joshua and Jacob. While Michelle Burnette was married to Joe Burnette, she had an affair with Joel Porter, who is married to Beth Porter. As a result of the affair, Michelle Burnette bore a child by Joel Porter. After the birth of this child, the Burnettes and the Porters were involved in a custody litigation in the Juvenile Court of Fayette County, which is not the subject of the

instant appeal. During the custody case, Joel Porter offered sworn testimony that he had contacted his friend, Scott Ferguson, to see if Scott's teenaged son, Ben Ferguson ("Ben") (who was dating twenty-one year old Maurie Baker ("Maurie") at the time), knew anyone who could make contact with Joshua Burnette ("Joshua") to obtain information about the Burnettes that could be used in the custody litigation.

According to the complaint, Maurie Baker, Ben Ferguson's girlfriend, made contact with Joshua Burnette *via* the internet. She then arranged to meet Joshua in Starkville, Mississippi at a non-party's home. The alleged purpose of the meeting was for Maurie to obtain and provide Joel Porter with any information that could be used against the Burnettes in the custody litigation. Maurie and Ben attended a party at the Mississippi home, where they socialized with both Burnette sons. On another occasion, Maurie and Ben went to the Burnette family home in Moscow, Tennessee, where they rode four-wheelers with Joshua Burnette. Afterward, the Burnette children invited Maurie and Ben to dinner at the Burnette home, where they allegedly witnessed the Burnette children, who were underage at that time, drinking alcohol and using tobacco products. This information was allegedly relayed to Joel Porter.

The original complaint in this case was filed on April 24, 2008; an amended complaint was filed on or about October 1, 2008. The amended complaint, which was filed by Joe Burnette, individually and as next friend of his sons, Joshua and Jacob (together "Appellants"), named Joel Porter, Jr., Beth Porter, Maurie Baker, Scott Ferguson, and Ben Ferguson (together "Appellees") as party-defendants. The complaint alleged causes of action for invasion of privacy and civil conspiracy against the Appellees. Specifically, the Burnettes claimed that the Appellees had created a ruse for the sole purpose of spying on the Burnette family in order to gain information for use against the Burnettes in the custody litigation. The complaint avers that the Appellees invaded the Burnettes' privacy when Maurie Baker and Ben Ferguson entered both the Mississippi home and the Burnette home. On October 2, 2008, Appellees filed a joint answer to the amended complaint, wherein they denied the material allegations contained therein.

Following discovery, on November 2, 2009, Appellees moved for summary judgment, on grounds that Appellants could not prove their claim for invasion of privacy because: (1) Maurie Baker and Ben Ferguson were the only party-defendants who actually went inside the Mississippi home and the Burnette home, so any cause of action for invasion of privacy against the remaining party-defendants cannot stand; (2) the Mississippi home did not belong to the Burnettes, so there can be no invasion of their privacy by entry therein; and (3) Maurie Baker and Ben Ferguson were invitees in the Burnettes' home and, as such, cannot be charged with invasion of privacy. Appellants opposed the motion for summary judgment. Following a hearing, the trial court granted the motion for summary judgment by order of

August 17, 2010. This order incorporates, by reference, a May 10, 2010 Letter Opinion filed by the trial court, which sets out the grounds for the trial court's grant of summary judgment on both the invasion of privacy claim and the conspiracy claim in compliance with Tennessee Rule of Civil Procedure 56.04.[1]

The Burnettes appeal. The sole issue for review is whether the trial court erred in granting Defendants/Appellees' motion for summary judgment.

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, LLC v. Lemme***, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50–51 (Tenn.1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall***

---

[1] The rule states, in relevant part, that "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion [for summary judgment], which shall be included in the order reflecting the court's ruling."

*v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd,* 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

We have reviewed the appellate record, and we conclude that, although there is some dispute of fact, the material facts are undisputed. Therefore, we are left only with a question of law as to whether Appellants have made out a case for invasion of privacy and/or civil conspiracy.

## Invasion of Privacy

Tennessee recognizes four types of invasion of privacy: "(a) unreasonable intrusion upon the seclusion of another . . . (b) appropriation of the other's name or likeness . . . (c) unreasonable publicity given to the other's private life . . . (d) publicity that unreasonably places the other in a false light before the public . . . ." Restatement (Second) of Torts § 652A(2) (1977); *see, e.g., Givens v. Mullikin*, 75 S.W.3d 383, 411 (Tenn. 2002); *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643 (Tenn. 2001). Here, the Appellants' cause of action for invasion of privacy involves only an allegation of intrusion upon their seclusion.

In William Prosser's 1960 categorization of privacy rights, he listed as his "first tort" the invasion of privacy by "intrusion." William Prosser, Privacy, 48 Cal. L. Rev. 383, 389–92 (1960); *see also* W. Page Keeton, Prosser and Keeton on the Law of Torts § 117, at 854 (5th ed. 1984). This type of "privacy" can be invaded by physical intrusion upon the plaintiff's seclusion or solitude, or into his or her private affairs, where the intrusion would be highly offensive to a reasonable person. Consequently, to qualify as an "intrusion," the defendant's actions must be so objectionable that the hypothetical ordinary, reasonable person would find them to be "highly offensive." It is not enough that the particular plaintiff is personally offended because this person may be unusually sensitive or susceptible. What is objectively offensive is largely a matter of social conventions and expectations as recognized by the law. *See, e.g., Roe ex rel. Roe v. Heap*, No. 03AP-586, 2004 WL 1109849 (Ohio Ct. App. May 11, 2004) ("The intrusion must be of such a character as would shock the ordinary person to

the point of emotional distress. . . . Thus, the standard is similar to that applicable to claims of intentional infliction of emotional distress.").

In at least two decisions, Tennessee courts have recognized that an unreasonable intrusion upon the seclusion or private affairs of another may be actionable as a tortious invasion of privacy. *See Givens v. Mullikin*, 75 S.W.3d 383, 411 (Tenn. 2002); *Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 210–11 (Tenn. Ct. App. 2000). In so doing, both courts quote the Restatement (Second) of Torts (1977) section 652B, which states: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Givens*, 75 S.W.3d at 411; *Roberts*, 46 S.W.3d at 210. The *Givens* Court also cited comment (c) to section 652B, which states that a defendant is subject to liability "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* at 412. Section 652B makes it clear that the tort of invasion of privacy by intrusion upon seclusion requires intent. *See* Restatement (Second) of Torts § 652B cmt. a (1977).[2]

In short, the Restatement definition, *supra*, requires the plaintiff to plead and prove three elements: (1) an intentional intrusion, physical or otherwise; (2) upon the plaintiff's solitude or seclusion or private affairs or concerns; (3) which would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977); *see also Mauri v. Smith*, 929 P.2d 307, 310 (Or. 1996); *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269 (Nev. 1995); *but see Shulman v. Group W Productions, Inc.*, 955 P.2d 469 (Cal. 1998) (wherein the California Supreme Court reduced the elements of the tort down to two: (1) intrusion into a private place, conversation or matter; (2) in a manner highly offensive to a reasonable person); *Dwyer v. American Exp. Co.*, 652 N.E.2d 1351 (Ill. Ct. App. 1995) (adopting the four-point test and holding that American Express' disclosure to merchants of information about the shopping preferences of cardholders did not constitute an unauthorized intrusion into the cardholders' seclusion because use of the card is voluntary and stating that American Express used only "information voluntarily given to it" by its

---

[2] The comment provides:

> a. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

cardholders).

In the context of the tort of invasion of privacy by intrusion upon seclusion, the finding of an intrusion is tied to the plaintiff's expectation of privacy. Consequently, in order to prove that there has been an intentional intrusion into a private place, conversation or matter, the plaintiff will usually have to prove that there was: (1) an actual, subjective expectation of seclusion or solitude in that place, conversation or matter; and that (2) that expectation of privacy was objectively reasonable. *See, e.g., Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc*., 306 F.3d 806, 812–13 (9th Cir. 2002). Thus, while a person might have a subjective expectation of privacy in a place or a communication, that expectation can be found to be legally unreasonable. For example, the District of Columbia Court of Appeals held that, while a business tenant had a subjective expectation of privacy in a letter she threw in the trash, that expectation was unreasonable. No intrusion was found when the tenant's landlord found the letter in the trash and used it against the tenant in a lawsuit. *Danai v. Canal Square Associates*, 862 A.2d 395 (D.C. Ct. App. 2004) ("Here [plaintiff] knowingly and voluntarily abandoned objects she placed in the trash. She relinquished control over them, knowing that they were readily accessible to a third party, the property managers and the landlord, upon collection from her office for mixing with other trash in a community trash room and ultimately accessible to others when the trash was removed and discarded off-site. . . . [A] properly instructed jury could not have found that she had a reasonable expectation of privacy in the discarded letter."). If there is a subjective expectation of privacy, then the question becomes whether the alleged invasion of that privacy was objectively reasonable. *See, e.g.*, *Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App.1997) (holding that an individual is liable for an invasion of privacy only if he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person"); *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc*, 30 F. Supp.2d 1182, 1188 (D. Ariz. 1998) (holding that a plaintiff can only recover if she has an "objectively reasonable expectation of seclusion or solitude in the place" (emphasis omitted)); *United States v. Billings*, 858 F.2d 617, 618 (10th Cir. 1988) (*per curiam*) (holding that no reasonable expectation of privacy exists as to what "can be observed by any ordinary patron of a public restroom").

Turning to the record, the undisputed facts show that Maurie Baker and Ben Ferguson were invited into both the Mississippi home and the Burnettes' Moscow, Tennessee home. However, it is also undisputed that the Maurie's and Ben's objective, in procuring the invitation, was based upon the ulterior motive of obtaining unfavorable information, which could be reported back to the Porters. Under normal circumstances, an invitation into someone's home would negate the most basic element of the invasion of privacy tort—i.e., invasion. As discussed in 62A Am. Jur. 2d <u>Privacy</u> § 220:

The maxim of law that one "who consents to an act is not wronged by it" applies to the tort of invasion of privacy. The right of privacy may be waived or lost by consent. Thus, consent to the invasion of one's right of privacy is a bar to a claim for damages for such invasion. . . . In the context of invasion of privacy, express or implied consent to the intrusion is often referred to as a "waiver of the right to privacy."

*Id*. (footnotes omitted); *see also* ***Med. Lab. Mgmt. Consultants.***, 306 F.3d 806 (holding that visit to medical laboratory's administrative offices by television network's undercover representatives, who were producing investigative news program, did not intrude upon laboratory owner's reasonably expected seclusion, as required to support claim under Arizona law for intrusion upon seclusion; owner's willingness to invite strangers into laboratory's administrative offices for a meeting and then on a tour of the premises indicated that owner did not have a reasonable expectation of solitude or seclusion in areas he showed to the representatives); *see also* ***Maryland v. Macon***, 472 U.S. 463, 469, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (individual had no expectation of privacy in areas of a store where the public was invited to transact business).

"Nowhere are expectations of privacy greater than in the home." ***Segura v. United States***, 468 U.S. 796, 820, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Consequently, invitation or consent, alone, may be ineffective to waive a plaintiff's expectation of privacy. This is discussed in 62A Am. Jur. 2d Privacy § 220:

The question of waiver or consent, however, does not have a zero-sum answer but, rather, presents an issue of the degree or extent of waiver or consent granted, which depends on the facts and circumstances of the case. Thus, the voluntariness of consent, as a defense to action for intrusion invasion of privacy, must be judged in light of the totality of the circumstances. For purposes of establishing a defense to a claim for intrusion invasion of privacy, consent must be given freely and voluntarily to be valid. It must be shown that there was no duress or coercion, actual or implied.

*Id*.

In the instant case, we are concerned with the fact that the Burnettes' consent may not have "been given freely and voluntarily" due to the fact that the invitation was procured under false pretenses and was, in effect, an exploitation of the Burnettes' trust. Although

-7-

invitation usually constitutes a "waiver of the right to privacy," the invitation must be given freely and voluntarily; otherwise, it is no waiver of the right to privacy. As discussed in the Restatement (Second) of Torts § 892B.

Consent Under Mistake, Misrepresentation Or Duress.

(1) Except as stated in Subsection (2), consent to conduct of another is effective for all consequences of the conduct and for the invasion of any interests resulting from it.
(2) If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.
[](3) Consent is not effective if it is given under duress.

*Id.*; *see also **Holt v. Alexander**,* No. W200302541COAR3CV, 2005 WL 94370 (Tenn. Ct. App. Jan. 13, 2005). The caselaw is sparse concerning the question of whether consent/invitation, which is induced by fraud, or misrepresentation, negates a plaintiff's expectation of privacy, and thus precludes the invasion of privacy tort. This is a question that, from our research, has not been directly addressed by a Tennessee court. That being said, we find guidance in those cases decided by courts of our sister states.

The area where courts are most frequently called upon to evaluate what is meant by "privacy" is in connection with the Fourth Amendment's protections against unreasonable searches and seizures. There, without attempting to precisely define what is meant by "privacy," the federal courts, for the past half century and more, have limited the Fourth Amendment's reach to circumstances where there is a "reasonable expectation of privacy." *See, e.g., **California v. Ciraolo**,* 476 U.S. 207 (1986); ***Katz v. United States**,* 389 U.S. 347 (1967). Although the instant appeal does not sound in criminal law, these Fourth Amendment cases are instructive insofar as they clarify situations in which there is a reasonable expectation of privacy from those situations where there is not. In the context of this case, we are particularly interested in factual scenarios where the defendant has gained access to the plaintiff's private space by misrepresentation or based upon ulterior motives.

In ***People v. Lucatero**,* 166 Cal. App.4th 1110, 83 Cal. Rptr.3d 364, 366 (Cal. Ct. App. 2008), a police officer contacted a real estate agent and feigned interest in a house listed for sale. The officer, accompanied by the real estate agent, then toured the home. *Id*. During the viewing, the officer confirmed information a source previously had provided

to him. *Id.* The officer included those confirmed facts in an affidavit and obtained a search warrant for the property. *Id.* The California Court of Appeals found the officer's entry to the home and the later search lawful, concluding that:

> [A]n investigating officer may pose as a potential buyer and enter a home under this misrepresentation, assuming the officer's actions do not exceed the scope of the consent. The officer must act as a potential buyer and do nothing that would violate the homeowner's legitimately held privacy expectations, as defined in the context of the homeowner's general invitation to members of the public to view the interior of the home for purposes of marketing the home.

*Id.* at 370.

Similarly, in ***State v. Ferrari***, 323 N.J.Super. 54, 731 A.2d 1225, 1226 (N.J. Super. Ct. App. Div. 1999), neighbors alerted police officers to suspicious happenings at the condominium unit the defendant rented. Noting that the condominium unit was listed for sale, police officers contacted the listing agent and indicated interest in purchasing the property. *Id*. When the officers toured the property with the agent, they observed marijuana in plain view. *Id*. This information was included in the affidavit for the search warrant the police subsequently obtained. *Id.* The court found the defendant had sustained no violation of his Fourth Amendment rights, noting that "[t]he actions of [the officers] . . . did not exceed what one would expect of a prospective purchaser. . . . Their actions violated no reasonable expectation of privacy possessed by defendant." *Id*. at 1228; *see also* ***State v. Poland***, 645 P.2d 784, 792 (Ariz. 1982) (observing that it is lawful for government agents to conceal their identities and "pose as potential buyers [of real estate] to investigate illegal firearms").

We find the analysis of the ***Lucatero*** and ***Ferrari*** decisions informative. In essence, both of these cases indicate that invitation or consent is a waiver of privacy in cases where the defendant does not exceed the scope of the invitation, even if that invitation was gained under false pretenses. In the context of false light invasion of privacy, 62A Am. Jur. 2d Privacy § 225 states:

> In order for waiver by consent to be asserted as a defense to an action for invasion of privacy, the consent must be as broad and inclusive as the act . . . complained of. Consent may be asserted as a defense only where it has not been exceeded; consent which has been exceeded is not a defense. The

-9-

general rule that advance consent to the commission of a tort upon oneself is strictly confined to those acts which are substantially the same as the acts consented to has been adopted in invasion of privacy cases.

*Id*. (footnotes omitted); *see also* ***Spiegel v. Schulmann***, 604 F.3d 72 (2nd Cir. 2010) (relying upon ***Dzurenko v. Jordache, Inc.***, 59 N.Y.2d 788, 464 N.Y.S.2d 730, 451 N.E.2d 477, 478 (N.Y. 1983) (holding, under New York law, that defendant's immunity from claim for invasion of privacy is no broader than consent extended to him); ***Special Force Ministries v. WCCO Television***, 584 N.W.2d 789 (Minn. Ct. App. 1998) (holding that a permitted entrant may become a trespasser by exceeding the scope of consent)[].

However, as stated in 62A Am. Jur. 2d <u>Privacy</u> § 42 (2011), mere trespass is not sufficient to be cognizable under the invasion of privacy umbrella:

> [T]respassing onto real property, without more, is not the form or magnitude of interference into a person's solitude or seclusion that would rise to the level of being highly offensive to a reasonable person, such as might be actionable as invasion of privacy.[***Whipps Land & Cattle Co., Inc. v. Level 3 Communications, LLC***, 265 Neb. 472, 658 N.W.2d 258 (2003)].

Based upon the foregoing discussion, we conclude that there must be more than a fraudulently obtained invitation to constitute an invasion of privacy. There must also be some further action that is outside the scope of the invitation. Examples of these types of intrusions are discussed in the Restatement (Second) of Torts §653, cmt. B:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit

-10-

an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

Having gained access to the Burnette's home, we can infer, under the particular facts of this case, that the invitation extended only to the more public areas of the home (e.g., living room, dining room, kitchen). Had Ben or Maurie exceeded the scope of the invitation by, for example, going into the bedrooms, or rummaging through drawers or mail, then they would have exceeded the scope of the invitation, thus triggering an invasion of privacy claim. However, there is no evidence that either Maurie or Ben exceeded the scope of their invitation. No evidence was presented that they looked anywhere that was especially private, nor did they do anything clandestine or subversive while they were in either home. According to the evidence, they stayed within the areas where they were invited.

Another scenario where an invitation will not provide a waiver to the expectation of privacy is where the plaintiff withdraws the invitation and, then, the defendant disregards the fact that the invitation has been rescinded. For example, in the case of ***State v. Fields***, No. A07-2164, 2009 WL 982015 (Minn. Ct. App. April 14, 2009), an assault victim had initially invited her assailant into her home. However, during the course of the assault, the victim attempted to lock appellant out of her apartment, and appellant broke the door to prevent this. The court held that "[clearly, the assailant] was not an invited guest in her home then or thereafter." *Id*. at *3. In the instant case, there is no evidence that the Burnettes' withdrew their invitation at any time while Maurie and Ben were inside the homes. Had they done so, and had Maurie and Ben stayed, that would have been outside the scope of the invitation and, thus, would have triggered an invasion of privacy tort.

Based upon the foregoing discussion, we conclude that the Appellants have not made out a cause of action for invasion of privacy based upon intrusion of seclusion. Even though Maurie and Ben obtained their invitation by subterfuge, they did not exceed the scope of the invitation, nor did the Burnettes withdraw the invitation at any time while Maurie and Ben were inside the homes. Without more than an ill-gotten invitation, the Appellees' actions do not objectively amount to highly unreasonable behavior so as to constitute an invasion of privacy.

## Conspiracy

Appellants' second cause of action is for conspiracy. It is well settled that, in order to maintain an action for civil conspiracy, a plaintiff must show that there is an "underlying

predicate tort allegedly committed pursuant to the conspiracy." ***Watson Carpet and Floor Coverings, Inc. v. McCormick***, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007) (citing ***Freeman Management Corp. v. Shurgard Storage Centers, L.L.C.***, 461 F. Supp.2d 629, 642 (M.D. Tenn. 2006)). Having determined above that there is no underlying tort of invasion of privacy by intrusion upon seclusion, there can be no conspiracy. However, even if we assume, *arguendo*, that the Appellees acted in concert to enlist Maurie Baker and Ben Ferguson to befriend the Burnette sons, as discussed above, there can be no tort in the absence of behavior beyond the scope of the invitation.

For the foregoing reasons, we affirm the order of the trial court, granting summary judgment in favor of Appellees. Costs of this appeal are assessed against the Appellant, Joe Burnette, individually and as next friend of Joshua and Jacob Burnette, and his surety.

_____
J. STEVEN STAFFORD, JUDGE