COURT OF APPEALS OF VIRGINIA

Present:   Judges Haley, Alston and Senior Judge Clements
Argued by teleconference


JOHN BRIAN REDMOND

                                                         OPINION BY
v.        Record No. 2443-09-4               JUDGE ROSSIE D. ALSTON, JR.
                                                       NOVEMBER 16, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
                            Dennis L. Hupp, Judge

            Roger A. Inger (Inger & Collins, P.C., on brief), for appellant.

            Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        John Brian Redmond (appellant) appeals his conviction of violating Code § 18.2-308.2

by possessing a firearm after having been convicted of a felony.  Appellant contends the trial

court erred in denying his motion to suppress the evidence.  Appellant also argues the evidence

was insufficient to sustain his conviction.  Finding no error, we affirm appellant's conviction.

                                I.  BACKGROUND

        Applying well-established principles of review on appeal, we state the evidence in the

light most favorable to the party prevailing below, the Commonwealth in this instance.  Haskins

v. Commonwealth, 31 Va. App. 145, 148, 521 S.E.2d 777, 778 (1999).

        The evidence showed that Eric Flagg, a special agent with the Bureau of Alcohol,

Tobacco and Firearms, received information that appellant, who had a prior felony conviction,

possessed firearms at his residence on Middle Road in Shenandoah County.  Flagg also learned

that the property had been listed for sale through a real estate company.  In response, Flagg

contacted the real estate agent for the property and said he was interested in looking at the house.

On August 3, 2008, Flagg and Investigator Laura Clutz met the realtor at the Middle Road residence. The realtor showed Flagg and Clutz the home, which had three levels of living space. In a den located in the basement was a wooden gun cabinet with glass panels. Several long guns were visible in the case. Flagg also saw several rounds of ammunition in the case. The realtor did not ask if Flagg and Clutz were police officers, and the officers did not volunteer this information.

Subsequently, the police filed an affidavit to obtain a warrant to search the Middle Road residence for illegal firearms, ammunition, and related evidence. The search warrant affidavit stated that Flagg had visited the residence with a realtor on August 3, 2008. The affidavit further stated,

> During the walk through with the realtor, SA Flagg observed a pawn ticket on the refrigerator door. The pawn ticket was recent and showed that Tonya [sic] Henry had pawned three firearms at Bear's Trading Post, a pawn broker in Winchester, Virginia. Additionally, while walking through the den located on the first floor, SA Flagg observed a glass and oak gun cabinet, which contained several firearms [including] modern rifles and black powder rifles. SA Flagg also observed a box of rifle ammunition.

A magistrate issued a search warrant for the entirety of the Middle Road residence on August 11, 2008, and police officers executed the warrant that same day. When the officers arrived, appellant was not present, but Tanya Henry and two young children were there.[1] The police advised Henry about the search warrant. Henry started making telephone calls in an attempt to locate appellant.

In the search, the police recovered several long guns from the unlocked gun cabinet in the basement den. During the search, police also observed on the walls of the residence's den photographs of appellant posing with deer that had been killed. In addition, miscellaneous items

---

[1] Henry married appellant on February 26, 2009, and changed her name to Tanya Redmond. However, for purposes of consistency, we refer to her in this opinion as "Henry."

related to guns and hunting were present in the den. The police also found a pistol in a shed adjacent to the residence. Two boxes of ammunition, a gun magazine, and some loose bullets were found in a kitchen cabinet. In the foyer, the police found a box of ammunition on top of a periodical published in January 2007. The periodical was addressed to appellant at the Middle Road residence. Men's clothing, boots, hunting equipment, and a firearm were found in the closet of the master bedroom in the house.

At trial, Henry testified that the property at Middle Road was titled in her name alone. She had moved into the residence in 2004, when appellant was renting the home. According to Henry, appellant subsequently bought the home and then sold it to her. She said appellant had moved out of the residence in June 2008 because she and appellant had been arguing. However, appellant would return to the house periodically to see the children and get clothes. Henry testified that after appellant left in June 2008, her nineteen-year-old son moved in to help her around the house. Henry said the guns the police found during the search belonged to her son and that the firearms were not present in the house when appellant was living there. Henry did acknowledge, however, that the male clothing in the master bedroom closet belonged to appellant.

The Commonwealth introduced documents proving that appellant deeded the property to himself and Henry as joint tenants in 2006. When the house was listed for sale in 2008, "Redmond" was indicated as the name of the owner of the property. At the time a bank foreclosed upon the property in March 2009, the listed owners were Henry and appellant.

II. SUPPRESSION

Appellant argues the police unlawfully entered the home and made the observations that provided the predicate for the items that were referenced in the search warrant affidavit.[2] Thus, he argues, the warrant was invalid and the trial court erred in refusing to suppress the evidence seized during the search. Essentially, appellant claims that the original entry into the residence by the police under the guise of being a potential buyer of the real estate was an illegal subterfuge, thus invalidating the basis for the search warrant. Where the defendant challenges the seizure of evidence by the police pursuant to a search warrant, he bears the burden of proving

---

[2] Appellant also contends that, even if the police officers lawfully entered the property pursuant to consent, they exceeded the boundary of that consent by closely examining the pawn ticket that was on the refrigerator. Appellant did not make this argument in the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (citing Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992); Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (noting that Rule 5A:18 bars even constitutional claims)); see Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See[,] e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc). As of July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

the search warrant invalid.[3]  See Lebedun v. Commonwealth, 27 Va. App. 697, 710-11, 501

S.E.2d 427, 433-34 (1998) (citations omitted).

The Fourth Amendment

> "protects people, not places." Katz v. United States, 389 U.S. 347,
> 351 (1967).  In order to effectuate the fourth amendment
> guarantees, the Supreme Court established the "exclusionary rule"
> which prevents evidence obtained in violation of the fourth
> amendment from being used against an accused.  Reynolds v.
> Commonwealth, 9 Va. App. 430, 435, 388 S.E.2d 659, 662-63
> (1990); see also Walls v. Commonwealth, 2 Va. App. 639, 651,
> 347 S.E.2d 175, 182 (1986).  Yet, the protections of the
> exclusionary rule are only available to individuals whose fourth
> amendment rights have been violated.  Rakas [v. Illinois], 439 U.S.
> [128,] 134 [(1978)]; accord United States v. Salvucci, 448 U.S. 83,
> 85 (1980); McCoy v. Commonwealth, 2 Va. App. 309, 311, 343
> S.E.2d 383, 385 (1986).  Thus, before affording the exclusionary
> rule protections to a defendant, a court must determine whether,
> based on the totality of the circumstances, the defendant
> "objectively had a reasonable expectation of privacy at the time
> and place of the disputed search." McCoy, 2 Va. App. at 311, 343
> S.E.2d at 385.  The party asserting fourth amendment rights has the
> burden of proving the government conducted an illegal search of a
> place where that party had a legitimate expectation of privacy.
> Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).

---

[3] Similarly, appellant bears the burden of establishing standing to challenge the search of the Middle Road residence.  Jones v. United States, 362 U.S. 257 (1960) (one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence must allege, and if the allegation is disputed, establish that he himself was the victim of an invasion of privacy); Shearer v. Commonwealth, 9 Va. App. 394, 404, 388 S.E.2d 828, 833 (1990).  A defendant's "'Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party.'" Parks v. Commonwealth, 221 Va. 492, 497, 270 S.E.2d 755, 758 (1980).  To the extent that appellant argues that he was not the owner of the Middle Road residence, nor did he reside there, keep property there, or have permission to exclude others from the premises, these arguments are inconsistent with appellant's standing to challenge the search of the Middle Road residence.  Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987).  However, because the Commonwealth did not raise the issue of appellant's standing to challenge the search of the Middle Road residence at trial or on appeal, we decline to consider the issue here.  Appalachian Voices v. State Corp. Comm'n, 277 Va. 509, 515, 675 S.E.2d 458, 460 (2009) (stating that the Court "will not entertain a standing challenge made for the first time on appeal").

Commonwealth v. Ealy, 12 Va. App. 744, 750-51, 407 S.E.2d 681, 685 (1991). "What a person knowingly exposes to the public, even in his own home . . . , is not a subject of Fourth Amendment protection." Katz, 389 U.S. at 351 (citations omitted).

In Lewis v. United States, 385 U.S. 206 (1966), the United States Supreme Court considered whether the exclusionary rule prohibited the use of evidence obtained by a federal narcotics agent who gained entry to a defendant's home through subterfuge. In Lewis, a federal narcotics agent disguised his identity and was invited into the defendant's home, where the officer purchased drugs from the defendant. Id. at 206. The Court found that

> when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

Id. at 211. The Court noted that the officer, while in the defendant's home, did not "see, hear, or take anything that was not contemplated, and in fact intended, by [the defendant] as a necessary part of his illegal business." Id. at 210.

We find no Virginia appellate decisions where a police officer, posing as a potential buyer of real property, entered a defendant's home that was listed for sale and thereby either viewed or obtained evidence against him. However, we find cases from other jurisdictions instructive.

In People v. Lucatero, 83 Cal. Rptr. 3d 364, 366 (Cal. Ct. App. 2008), a police officer contacted a real estate agent and feigned interest in a house listed for sale. The officer, accompanied by the real estate agent, then toured the home. Id. During the viewing, the officer confirmed information a source previously had provided to him. Id. The officer included those confirmed facts in an affidavit and obtained a search warrant for the property. Id. The

California Court of Appeal found the officer's entry to the home and the later search lawful, concluding that

> an investigating officer may pose as a potential buyer and enter a home under this misrepresentation, assuming the officer's actions do not exceed the scope of the consent. The officer must act as a potential buyer and do nothing that would violate the homeowner's legitimately held privacy expectations, as defined in the context of the homeowner's general invitation to members of the public to view the interior of the home for purposes of marketing the home.

Id. at 370.

Similarly, in State v. Ferrari, 731 A.2d 1225, 1226 (N.J. Super. Ct. App. Div. 1999), neighbors alerted police officers to suspicious happenings at the condominium unit the defendant rented. Noting the condominium unit was listed for sale, police officers contacted the listing agent and indicated interest in purchasing the property. Id. When the officers toured the property with the agent, they observed marijuana in plain view. Id. This information was included in the affidavit for the search warrant the police subsequently obtained. Id. The court found the defendant had sustained no violation of his Fourth Amendment rights, noting that "[t]he actions of [the officers] . . . did not exceed what one would expect of a prospective purchaser. . . . Their actions violated no reasonable expectation of privacy possessed by defendant." Id. at 1228; see also State v. Poland, 645 P.2d 784, 792 (Ariz. 1982) (observing that it is lawful for government agents to conceal their identities and "pose as potential buyers [of real estate] to investigate illegal firearms").

We find the analysis of the Lucatero and Ferrari decisions compelling. In this instance, Flagg accepted the offer to enter and view the home at Middle Road when he contacted the real estate agent and indicated interest in the property. There was no evidence Flagg or Clutz made any representation to the realtor regarding their reason for wanting to tour the house. Moreover, the police officers' actions while inside the property did not exceed what one would expect of a

prospective purchaser. Flagg and Clutz did not conduct an exhaustive search of the home when they visited it with the realtor. The firearms, ammunition, and pawn ticket all were in the officers' plain view and were readily observable on August 3, 2008. Thus, the officers' actions violated no reasonable expectation of privacy possessed by appellant.

Finding that the officers did not violate any reasonable expectation of privacy of appellant by entering the home as prospective buyers, we conclude the trial court did not err in denying appellant's motion to suppress the evidence.

## III. SUFFICIENCY

Appellant was charged with possessing a firearm unlawfully on or about August 11, 2008, the date the police searched the Middle Road residence. Appellant contends the evidence was insufficient to support his conviction of the offense.

> Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below. Baldwin v. Commonwealth, 274 Va. 276, 278, 645 S.E.2d 433, 433 (2007); Robinson v. Commonwealth, 273 Va. 26, 30, 639 S.E.2d 217, 219 (2007). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it. Coles [v. Commonwealth], 270 Va. [585,] 587, 621 S.E.2d [109,] 110 [(2005)]; Burns v. Commonwealth, 261 Va. 307, 337, 541 S.E.2d 872, 892 (2001).

Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

Code § 18.2-308.2 provides that "[i]t shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess . . . any firearm."

> "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary. To establish constructive possession of the firearm by a defendant, the Commonwealth must present evidence of acts, statements, or

- 8 -

conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control."

Smallwood v. Commonwealth, 278 Va. 625, 630, 688 S.E.2d 154, 156 (2009) (quoting Bolden, 275 Va. at 148, 654 S.E.2d at 586).  Moreover,

[o]wnership or occupancy . . . of premises where [contraband is] . . . found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items . . . on the premises in order to prove that the owner or occupant constructively possessed the contraband . . . .

Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (citing Code § 18.2-250; Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986)).  To support an inference that the owner or occupant of property also possesses contraband located on the premises, "the owner or occupant must be shown to have exercised dominion and control over the premises and to have known of the presence, nature and character of the contraband at the time of such ownership or occupancy."  Id. at 435, 425 S.E.2d at 84 (citation omitted).

There was credible evidence to show that appellant was the owner of the Middle Road residence at the time the search warrant was executed.  Although Henry testified that she was the sole owner of the Middle Road residence in August 2008, this testimony was discredited by the Commonwealth's evidence.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).  The Commonwealth's evidence was sufficient to prove that appellant owned the property at Middle Road jointly with Henry on the date of the search.  Appellant's name, not Henry's, was provided when the property was listed for sale in 2008.  In addition, Henry made attempts to alert appellant when the police arrived to execute the search

warrant. As the owner of the Middle Road residence, appellant exercised dominion and control over the premises where the guns were found.

The evidence was also sufficient to show that appellant knew of the presence, nature, and character of the guns found on the premises. Henry claimed that appellant moved from the residence in June 2008, the guns the police found belonged to her son, and the guns were not in the home while appellant was living there. In making its credibility determination, the trial court was free to reject Henry's testimony. Moreover, Henry testified that, even after June 2008, appellant returned to the Middle Road residence periodically to see the children and to obtain clothing. The police found a firearm placed on top of appellant's clothing in the master bedroom closet. Furthermore, the firearms in the unlocked glass and oak gun cabinet and the ammunition in the foyer were readily observable to anyone in the home. Just as Flagg and Clutz could observe the firearms in plain sight during their walk-through of the house, so could appellant. Because several firearms were in plain view, the evidence was sufficient to show that appellant knew of their presence, nature, and character. Regardless of Henry's claim that appellant had moved out prior to the search, appellant clearly had access to the firearms, which were openly present in the home he owned.

Considering all the facts and circumstances, the evidence was sufficient for the fact finder to conclude, beyond a reasonable doubt, that in August 2008 appellant constructively possessed the firearms. Accordingly, the evidence was sufficient to support appellant's conviction, and we do not disturb it on appeal.

## IV. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction.

Affirmed.

- 10 -