COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Russell and Callins
Argued by videoconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 1110-21-3        JUDGE WESLEY G. RUSSELL, JR.
MARCH 29, 2022

MELVIN KEITH NOAKS


FROM THE CIRCUIT COURT OF WISE COUNTY
John C. Kilgore, Judge

Victoria Johnson, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellant.

C. Seth Baker (C. Seth Baker, P.C., on brief), for appellee.


Melvin Keith Noaks was indicted for various offenses, including possession of a controlled

substance in violation of Code § 18.2-250.  In the trial court, he moved to suppress, on Fourth

Amendment grounds, certain evidence recovered related to a search of an apartment where he was

present.  The trial court granted the motion to suppress, and the Commonwealth now appeals

pursuant to Code § 19.2-398(A)(2).[2]  Because we agree with the Commonwealth that Noaks failed

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] Code § 19.2-398(A)(2), in pertinent part, authorizes this Court to hear pretrial appeals
brought by the Commonwealth from "[a]n order of a circuit court prohibiting the use of certain
evidence at trial on the grounds such evidence was obtained in violation of the provisions of the
Fourth . . . Amendment[] to the Constitution of the United States[.]"

to establish a reasonable expectation of privacy in the area searched, we reverse the trial court's ruling on the motion to suppress.[3]

BACKGROUND[4]

On the afternoon of September 20, 2019, Deputy James Cress of the Wise County Sheriff's Department investigated a call he had received regarding a black car "riding around Appalachia selling drugs." Cress found a car matching the description parked "really close" to Apartment 56 in the Inman Village apartment complex. Cress asked some bystanders if they knew to whom the car belonged, and they indicated to him that the driver was in Apartment 56. Apartment 56, a second-floor unit, was leased to Megan Caudill.

Cress knocked on the door of Apartment 56, and Deyasha Miller, who was babysitting, opened the door. Cress observed that Miller's eyes were "glassy" and that "[s]he was extremely nervous." Cress saw a "small child" and a man, who appeared to be intoxicated, with his head on a table. Cress asked Miller whether the man was "okay," and although she responded that the man

---

[3] Both in the proceedings below and on appeal, the parties, at different times, have framed the argument as centering on whether Noaks had a "reasonable expectation of privacy" in the apartment searched or whether he had "standing" to assert the protections of the Fourth Amendment. In the context of the Fourth Amendment, "reasonable expectation of privacy" and "standing" are shorthand ways of stating the same thing: that a person has a sufficient interest to allow him to raise a Fourth Amendment challenge. Although the "reasonable expectation of privacy" formulation has become more common, both courts and litigants have used the phrases interchangeably over the years. *See, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 140 (1978) (addressing the parties' Fourth Amendment standing argument before concluding that the issue is better described using the privacy rubric "of substantive Fourth Amendment law"); *Hurley v. Commonwealth*, 36 Va. App. 83, 88 n.1 (2001) (defining the Fourth Amendment "standing" inquiry as whether a person has "a legitimate expectation of privacy" (internal quotation marks and citation omitted)); *Commonwealth v. Holloway*, 9 Va. App. 11, 18 (1989) (recognizing that a person who lacks an "expectation of privacy" in an object lacks "standing to complain of the property's search and seizure"). Although the terms are interchangeable in this context, we will use the "reasonable expectation of privacy" formulation in this opinion.

[4] Because Noaks was the prevailing party below, we state the facts in the light most favorable to him and grant him the reasonable inferences that flow from that view of the evidence. *Mitchell v. Commonwealth*, 73 Va. App. 234, 239 (2021).

was just sleeping, Cress entered the apartment to check on the man. Cress claims to have been concerned because "it was not normal for somebody to be sleeping that way on a table." Cress recalled having asked Miller permission to enter, but he could not recall what Miller's response was.

The apartment has multiple bedrooms, one of which contained children's furniture. In another bedroom, Cress came across Noaks; the room was dark, and the door was open. A pill bottle was on the nightstand, and a bag of marijuana was next to Noaks, who "was laying in the bed with his head toward the window." Cress asked Noaks to go to the living area, where Cress then noticed a black container on the table, near the man and in the vicinity of the playing child.

Having seen similar containers used in narcotics cases, Cress asked the man what was in the container. When the man replied that he did not know, Cress requested that the man open it to show him what was inside. The man refused, so Cress "told him, . . . for the child's safety, I'm going to open it and make sure it's nothing dangerous for the kid." Methamphetamine was in the container. Cress arrested the man and escorted him to a squad car outside.

Upon returning to the bedroom where he had found Noaks, Cress noticed that the window was now open with the curtains fluttering. Cress looked outside the second-story window and saw a pill bottle on the ground outside in a common area of the apartment complex. Another deputy picked up the bottle, which had Noaks' name on it and "contained a clear, crystal substance." Laboratory testing confirmed the substance in the bottle to be methamphetamine. Caudill was not present at the scene during the encounter, and at no point did Cress secure a search warrant.

Noaks filed a motion to suppress on July 12, 2021, requesting the trial court to "order any statement or evidence improperly obtained be excluded from any trial . . . against [him] as a result of the seizure of such evidence . . . ."

A hearing on the motion was held on August 17, 2021. At the outset of the hearing, the Commonwealth challenged Noaks' ability to raise a Fourth Amendment claim regarding Cress'

entry into and search of the apartment. Specifically, the Commonwealth argued that, before he could claim Fourth Amendment protections, Noaks had to establish that he had a reasonable expectation of privacy in the apartment.

In response, Noaks called Cress to testify. After establishing basic biographical and employment information regarding Cress, Noaks asked Cress questions related to the ownership/tenancy of the apartment and Noaks' status in the apartment. Based on the testimony viewed in the light most favorable to Noaks, it was established that the apartment complex was owned by Wise County, Caudill was the lessee of Apartment 56, Caudill was not present during the encounter, and Noaks was asleep in a bedroom when police first encountered him.

Noaks' counsel asked Cress if Noaks "ma[d]e any comments about living there or staying there[;]" Cress responded that he did not recall any such comments and that he had never seen Noaks there previously. Noaks' counsel later asked if Cress saw "any men's clothing in that bedroom[;]" Cress did not recall there being any.

No testimony or other evidence was offered on the questions of whether Noaks knew Caudill, whether Caudill had invited Noaks to the apartment, whether Noaks and Caudill were friends, or whether Caudill was aware that Noaks was present in the apartment. Similarly, no testimony or other evidence was adduced to establish how Noaks came to be present in the apartment, how long he had been there or intended to stay, or any permissions that Caudill (or anyone else) may or may not have given regarding Noaks' use of the apartment.

Having completed his questioning of Cress regarding his reasonable expectation of privacy, Noaks ended his initial questioning of Cress. Turning to the merits of the motion, the Commonwealth called Cress, who testified to his activities and interactions on the day in question and was subjected to cross-examination about those topics. Footage from Cress' body camera was played for the trial court and admitted as an exhibit. Nothing in Cress' testimony as

- 4 -

a witness for the Commonwealth or in the video footage that was introduced addressed Noaks' relationship with Caudill, how Noaks came to be in the apartment, or any aspect of Noaks having a Fourth Amendment interest in the apartment.[5]

The trial court granted Noaks' motion to suppress, suppressing all evidence discovered as a result of Cress' entry into and search of the apartment. Additionally, the trial court also suppressed the pill bottle and its contents that officers had discovered outside in the common area of the apartment complex.

In a letter opinion, the trial court "expound[ed] on the rationale of [its] ruling." Citing *Minnesota v. Olson*, 495 U.S. 91, 99 (1990), and characterizing Noaks as "a person utilizing a friend's apartment as a place of rest during the middle of [the] day[,]" the trial court found that Noaks "had a reasonable expectation of privacy in the apartment that was searched without a warrant, and thus has standing to assert a Fourth Amendment violation."

The Commonwealth now appeals, asserting two assignments of error. First, the Commonwealth submits that the trial court erred in concluding that Noaks had a sufficient reasonable expectation of privacy "to raise [Fourth] Amendment claims pertaining to a search of Megan Caudill's apartment." The Commonwealth also argues that the trial court "erred in excluding the pill bottle containing methamphetamine found in [the] public area outside the window of the room [wherein] Noaks was found[.]"

ANALYSIS

I. Standard of review

In reviewing the trial court's granting of Noaks' motion to suppress, we view the evidence in the light most favorable to him and grant him the reasonable inferences that flow from that

---

[5] In the more than one hour of body camera footage that was admitted into evidence, Noaks confirms to officers that he is not a resident of the apartment, stating "I don't live here." He does not indicate how he came to be there on that day.

view of the evidence. *Mitchell v. Commonwealth*, 73 Va. App. 234, 239 (2021). In conducting our review, "[w]e are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence[,]" *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008); however, for legal questions, such as "whether a defendant had a reasonable expectation of privacy sufficient to permit him to raise a Fourth Amendment challenge to a search[,]" our review is *de novo*. *Sharpe v. Commonwealth*, 44 Va. App. 448, 454 (2004).

II. The Fourth Amendment and reasonable expectations of privacy

The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Although it serves to prevent police officers from invading places and seizing things, the amendment, by its express terms, "protects people, not places" or things. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).

As a result, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *McCoy v. Commonwealth*, 2 Va. App. 309, 311 (1986) (ellipsis in original) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "A search can therefore be unconstitutional with respect to one person, yet the evidence obtained therefrom admissible against a second person." *United States v. Gray*, 491 F.3d 138, 144-45 (4th Cir. 2007). Thus, "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their *own* Fourth Amendment rights have in fact been violated." *United States v. Salvucci*, 448 U.S. 83, 85 (1980) (emphasis added).

"Whether a person has the right to claim the protection of the Fourth Amendment depends upon whether the person has a legitimate expectation of privacy in the place searched." *Megel v. Commonwealth*, 262 Va. 531, 534 (2001) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

Accordingly, in addressing a motion to suppress and "before affording the exclusionary rule protections to a defendant, a court must determine whether . . . the defendant 'objectively had a reasonable expectation of privacy at the time and place of the disputed search.'" *Commonwealth v. Ealy*, 12 Va. App. 744, 750-51 (1991) (quoting *McCoy*, 2 Va. App. at 311); *see also Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (holding that, to "claim[] the protection of the [Fourth] Amendment[,]" a person must have "a legitimate expectation of privacy in the invaded place"). A defendant bears the "burden of proving . . . [he] had a legitimate expectation of privacy" in the place that was searched. *Redmond v. Commonwealth*, 57 Va. App. 254, 261 (2010) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)).

Whether any specific individual has such an interest in any specific home or apartment turns on the ties the person has to the place or to the owner or lawful tenant of the home or apartment. Although mere presence in a home or apartment is insufficient, *Carter*, 525 U.S. at 89-90, Fourth Amendment protections clearly "safeguard[] the privacy interests of owners, boarders, and tenants, of a home, apartment, or other dwelling place. Co-tenants, co-owners, and co-occupants can also avail themselves of the Fourth Amendment's protections. And, travelers are entitled to be free from unreasonable government scrutiny in their hotel and motel rooms[,]" *Gray*, 491 F.3d at 144 (internal citations omitted).

Less clear is whether those protections apply to situations where a person's ties to the place to be searched are less formal. As the United States Supreme Court has observed, "the text of the Amendment suggests that its protections extend only to people in 'their' houses[;]" however, there are "some circumstances" in which "a person may have a legitimate expectation of privacy in the house of someone else." *Carter*, 525 U.S. at 89.

- 7 -

One such circumstance is when a person is invited by the owner or tenant to stay in the home or apartment as an overnight guest. *Olson*, 495 U.S. at 100. Explaining its rationale for this conclusion, the United States Supreme Court noted as follows:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.

*Id.* at 98.

It does not follow, however, that every invited guest in a home or an apartment enjoys the protections of the Fourth Amendment. Although "an overnight guest in a home may claim the protection of the Fourth Amendment, . . . one who is merely present with the consent of the householder may not." *Carter*, 525 U.S. at 90. Thus, *Olson* and *Carter* recognize a continuum of circumstances ranging from the invited overnight guest who enjoys the protections of the Fourth Amendment to one who is merely present who does not. *See id.* at 91 ("If we regard the overnight guest in *Minnesota v. Olson* as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely 'legitimately on the premises' as typifying those who may not do so, the present case is obviously somewhere in between."). In determining whether Fourth Amendment protections apply to a specific person in a particular situation, courts must consider the totality of the circumstances, including the nature of the relationship between the "guest" and the householder, their prior connection, any agreement regarding the guest's presence, whether it is an overnight visit, the length of the visit, and any

other facts that shed light on the question of where on the continuum between invited overnight guest and merely present on the premises an individual falls.

### III. Noaks' status in Caudill's apartment

In finding that Noaks was entitled to invoke the Fourth Amendment regarding Cress' entry into and search of Caudill's apartment, the trial court characterized Noaks as "a person utilizing a friend's apartment as a place of rest during the middle of [the] day[.]" From this premise, the trial court equated a "guest seeking a place of refuge to sleep" during the day to the overnight guest in *Olson* and concluded that Noaks established that he had a sufficient privacy interest in Caudill's apartment. We disagree.

The record simply does not support the trial court's characterization that Noaks was Caudill's friend who had sought and been granted permission to sleep in the apartment during the day. The record contains no direct evidence that Noaks knew Caudill, that Caudill had invited Noaks to the apartment, that Noaks and Caudill were friends, or that Caudill was even aware that Noaks was present in the apartment. No testimony or other evidence was offered to explain how Noaks came to be present in the apartment or any permissions that Caudill (or anyone else) may or may not have given regarding Noaks' use of the apartment. The record is devoid of any evidence regarding when Noaks came to be in the apartment and when he intended to leave. The record is devoid of evidence, such as Noaks having clothes or luggage with him, to suggest that Noaks' presence was intended to last more than a short, non-overnight period.

The lack of such evidence is fatal to Noaks' attempt to claim the protections of the Fourth Amendment in this case. He bore the burden of adducing sufficient evidence to establish that he had a reasonable expectation of privacy in the apartment. *Redmond*, 57 Va. App. at 261. Viewed in the light most favorable to Noaks, the evidence establishes that he was present and asleep in the

apartment, but nothing more.[6]  Thus, the evidence was insufficient to allow him to claim Fourth

Amendment protections regarding Cress' entry into and search of Caudill's apartment.  *Carter*, 525

U.S. at 89-90.

CONCLUSION

For the foregoing reasons, the record fails to establish that Noaks had a sufficient

reasonable expectation of privacy in Caudill's apartment to allow him to assert Fourth

Amendment protections related to Cress' entry into and subsequent search of the apartment.  As

a result, the trial court erred in granting Noaks' motion to suppress.  Accordingly, we reverse the

judgment of the trial court and remand the matter for further proceedings consistent with this

opinion.[7]

*Reversed and remanded.*

---

[6] Because the record is devoid of evidence to support the trial court's characterization that Noaks was Caudill's friend and had sought and been granted permission to seek refuge and sleep in the apartment on the day in question, we are not bound by that characterization.  *Malbrough*, 275 Va. at 168.  Similarly, no reasonable inference that he had such a relationship with Caudill and enjoyed such permission can be drawn from his mere presence in the apartment.  If such an inference were permissible, it would swallow the distinction between being merely present and being an invited, overnight guest that is at issue in such cases.

[7] "The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available."  *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (internal quotation marks and citation omitted).  Because our conclusion that Noaks failed to establish that he had a reasonable expectation of privacy in Caudill's apartment requires reversal of the trial court's judgment in its entirety, we do not reach the Commonwealth's second assignment of error regarding whether, assuming Noaks could invoke the protections of the Fourth Amendment, the trial court erred in ruling the contents of the pill bottle found outside the apartment were inadmissible.