COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and Athey

LEWIS DARNELL SKINNER, JR.

MEMORANDUM OPINION\*

v.      Record No. 0777-23-1

PER CURIAM
MAY 14, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Robert G. MacDonald, Judge

(Lauren Brice, Assistant Public Defender; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Andrew T. Hull, Assistant
Attorney General, on brief), for appellee.

Following a jury trial in the Circuit Court of the City of Chesapeake ("trial court"), Lewis

Skinner ("Skinner") was convicted of possession of a firearm by a violent, convicted felon. He

challenges the trial court's denial of his motion to strike, asserting that the evidence failed to prove

he was aware of the firearm's presence in his vehicle. After examining the briefs and record in this

case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly

without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). Thus, finding no error, we affirm the

trial court's judgment.

I. BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On September 23, 2022, Detective A. Rega ("Detective Rega") was at a stoplight in his unmarked vehicle when he noticed the adjacent vehicle "creeping . . . past the stop line." The vehicle, an Audi, had "extremely dark tint" on the windows. Detective Rega checked the Audi's tags and learned they belonged to another vehicle. Detective Rega fell in behind the Audi and activated his emergency equipment; rather than stopping, however, the Audi accelerated. Detective Rega pursued the Audi in a high-speed chase and announced his location on the radio. Officer W. Swoope ("Officer Swoope") joined Detective Rega's pursuit in his patrol car with his lights and siren activated. When the Audi finally stopped near an apartment complex, Skinner exited the driver's door and ran. Detective Rega announced his hot pursuit to other officers on the radio.

Detective Bray saw both Detective Rega and the Audi stop. When Detective Rega announced his foot pursuit on the radio, Detective Bray parked his police vehicle and ran in the direction of Detective Rega. Detective Bray estimated that he located the Audi within "a minute" of Detective Rega's foot pursuit announcement. After identifying the direction of Detective Rega's pursuit of the driver of the Audi, Detective Bray remained with the Audi until Officer Swoope returned. The Audi's doors were closed, and no one approached the vehicle until Officer Swoope joined Bray. At that time, Skinner's girlfriend appeared on the scene and attempted to open the driver's door of the Audi, but the officers intervened and directed her away from the vehicle.

Meanwhile, Detective Rega caught up with Skinner. After slipping, Skinner grabbed his waistband, prompting Detective Rega to draw his service weapon before commanding Skinner to show him his hands. In response, Skinner declared that he was unarmed, raised his hands, and continued to run. Assisted by another officer, Detective Rega finally subdued Skinner in an

apartment building breezeway.  While the assisting officer drove Skinner back to the abandoned Audi, Detective Rega retraced the path of his pursuit to look for possible contraband.  When Detective Rega arrived back at the Audi a few minutes later, the driver's door was open, and officers were "checking" the vehicle.  Through the open door of the vehicle, Detective Rega saw a Glock handgun on the driver's side floorboard where the driver's feet would have rested.

After being advised of his rights under *Miranda v. Arizona*,[1] Skinner admitted that he was a convicted felon and that he ran "because he was on probation."  He stated that he believed he could outrun the police and hoped that his vehicle's tinted glass would prevent the pursuing officer from identifying him.  He denied any knowledge of the firearm found in the car.

At trial, Detective Bray testified that the gun was visible upon opening the driver's door.  The police collected the firearm, swabbed it, and submitted the swab for DNA analysis.  That analysis revealed a "DNA mixture" on the gun's grip, trigger, and slide.  Skinner could not be eliminated as a major contributor to the DNA mixture.

Skinner moved to strike the evidence, asserting that proximity alone was insufficient to prove constructive possession of the firearm and that the Commonwealth had failed to prove he "had actual knowledge" of the firearm's presence in the vehicle.  The trial court denied the motion, ruling that the evidence had proved more than Skinner's proximity to the firearm.  Following closing argument, the jury convicted Skinner as charged.  He appealed.

II. ANALYSIS

A.  *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting

_____

[1] 384 U.S. 436 (1966).

*Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

      B. *The trial court did not err in denying Skinner's motion to strike the evidence because there was sufficient evidence of Skinner's knowledge of the firearm to support his conviction.*

Skinner argues that the Commonwealth failed to prove he had knowledge of the firearm's presence and therefore he could not have been convicted of being a violent, convicted felon in possession of a firearm. Skinner contends that the evidence did not exclude a reasonable hypothesis that he was unaware of the firearm's presence on the floorboard. He stresses that he was engaged in "a high-speed chase that ended with him making a sudden stop," and thus, the evidence supports a reasonable hypothesis that "the gun slid out from under the driver's seat and into the floorboard when [he] suddenly stopped the vehicle."[2] Moreover, Skinner contends that, despite the presence of his DNA on the handgun, the evidence did not prove how his DNA was deposited on the firearm. Therefore, he emphasizes that his DNA could have been deposited through means other than handling the gun, such as "coughing, sneezing, or . . . shedding skin cells in proximity of [the gun]." He stresses that the DNA analysis did not identify whether his

---

      [2] As Skinner argued below that the evidence failed to prove he was aware of the gun's presence on the floorboard, we find no merit in the Commonwealth's assertion that he failed to preserve this argument.

DNA was present on more than one location on the gun, casting additional doubt on whether it was deposited through his handling the gun or through the transfer of his DNA material from another location in the vehicle. Finally, Skinner emphasizes that his flight from the police did not necessarily constitute evidence of guilty knowledge; instead, he maintains that the evidence proved he "usually runs from the police" as "his regular practice." He notes that, other than fleeing, he was "cordial, friendly, and cooperative" with the police. We disagree.

"Possession of a firearm may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018). "Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.'" *Id.* (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (en banc)). "Whether evidence is sufficient to prove constructive possession 'is largely a factual' question." *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)).

"Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof." *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

To satisfy its burden of proof, the Commonwealth must exclude "every *reasonable* hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997)

(quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). This "reasonable-hypothesis principle," however, "is not a discrete rule unto itself" and "does not add to the burden of proof placed upon the Commonwealth in a criminal case." *Vasquez*, 291 Va. at 249-50 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). The Commonwealth need not "negate what 'could have been' or what was a 'possibility.'" *Nelson v. Commonwealth*, 281 Va. 212, 218 (2011). "[T]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the [firearm,] drugs or paraphernalia [where they were found near an accused]." *Pemberton v. Commonwealth*, 17 Va. App. 651, 655 (1994) (third alteration in original) (quoting *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992)). Thus, while "a factfinder cannot 'arbitrarily' choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant," an arbitrary choice occurs "only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Vasquez*, 291 Va. at 250 (quoting *Dixon v Commonwealth*, 162 Va. 798, 803 (1934)).

"A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession," whether sole or joint. *Smallwood*, 278 Va. at 630 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). Constructive possession may be established by "evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Id.* "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Id.* at 630-31. Further, ownership or occupancy of a vehicle in which the firearm is found "is a circumstance that may be considered together

with other evidence tending to prove that the owner or occupant exercised dominion and control over items" in the vehicle, "in order to prove that the owner or occupant constructively possessed the [firearm]." *Redmond v. Commonwealth*, 57 Va. App. 254, 264-65 (2010) (quoting *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992)). Finally, it is well-settled that "[f]light following the commission of a crime is evidence of guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996)).

Here, the evidence proved that the firearm was on the floorboard beneath Skinner's feet when he attempted to elude Detective Rega during a high-speed chase. Although Skinner asserts that the evidence proved he fled from the police "as a matter of practice," his flight was an additional circumstance from which the fact finder could reasonably infer that he was aware of the firearm's presence and that his status as a convicted felon prohibited his possession of it. *See Ricks v. Commonwealth*, 39 Va. App. 330, 336-37 (2002) (holding that when a defendant has committed more than one crime, the fact finder may infer consciousness of guilt as to "all of his crimes" provided there is a sufficient "nexus" between the flight and the crime).

The evidence also proved that Skinner's DNA was on the firearm, permitting a rational inference that he had handled it. Further, although Skinner speculates that the firearm might have slid from beneath the seat when he stopped the car, no evidence supports that assertion. Instead, the evidence proved that the firearm was in plain view on the driver's floorboard when Skinner exited the vehicle. Almost immediately after Skinner ran from the car, police secured it from third party interference. As no one other than Skinner exited the car, the evidence supported a reasonable conclusion that he was its sole occupant and exercised dominion and control over the firearm. Skinner's flight, his exclusive occupancy and control of the vehicle, his status as a convicted felon, his proximity to the firearm, the firearm's location in plain view on the floorboard, and his DNA on the gun, when viewed as a whole, were sufficient to prove that

- 7 -

Skinner was aware of the firearm's presence and that he constructively possessed it.[3]  We therefore conclude that the trial court did not err by denying Skinner's motion to strike.

III.  CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[3] We agree with Skinner that his statement to Detective Rega denying he had a gun was made in the context of reassuring the detective that he was unarmed and was not relevant to whether he knew there was a firearm in the Audi.