COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Lorish

UNPUBLISHED

MALEIK JAQUAN JACKSON

v.      Record No. 0807-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MAY 13, 2025

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Shannon T. Sherrill, Judge

(Dana R. Cormier; Dana R. Cormier, P.L.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; C. David Sands, III, Senior
Assistant Attorney General, on brief), for appellee.

A jury convicted Maleik Jaquan Jackson of possessing a firearm as a felon, and the court

sentenced him to five years' incarceration. On appeal, Jackson contends that the evidence was

insufficient to prove that he possessed the firearm. After examining the briefs and record, the

panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74

Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This

standard "requires us to 'discard the evidence of the accused in conflict with that of the

Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On December 14, 2022, officers executed a search warrant at an apartment in Augusta County after receiving information that Jackson was living there, had a firearm, and was selling drugs. During the search, Investigator Logan Turner seized a firearm from the floor of the spare bedroom and placed it on a nearby couch. The investigator was wearing gloves when he seized the gun. A sports jersey, hat, and what looked like a drawing of Jackson were hung on the walls of the room, and a pair of men's shoes were on a TV stand. Officers also found mail addressed to Jackson in the bedroom and a marriage certificate for Jackson and his wife, Allison, in the living room. Virginia State Police Special Agent Greg Clifton, who was also present for the search and wearing gloves, brought the firearm back to the sheriff's office.

Because Jackson had been convicted of robbery and use of a firearm in October 2018, the police obtained a warrant charging him with possession of a firearm by a convicted felon.

On January 4, 2023, Allison posted a picture on social media in which she and Jackson were posing in front of a mirror in one of the apartment's bathrooms. Jackson was fanning out a stack of cash and standing behind Allison. He appeared to have a gun in his right pocket, and another gun was on the countertop in front of Allison. Special Agent Clifton saw the picture and obtained a second search warrant for the apartment on January 5. Jackson and Allison were present during the second search, during which officers did not find anything incriminating.

At trial, Julia Pugh, a forensic scientist from the Virginia Department of Forensic Science (DFS), testified as an expert in DNA extraction and analysis. Pugh analyzed a DNA mixture profile developed from the gun recovered during the first search and a buccal swab obtained from Jackson. The DNA mixture profile was a "combined sample" taken from the gun's "grip, trigger, and trigger guard" and the magazine's "base plate and follower." The mixture contained

- 2 -

the DNA of at least three individuals, and Pugh could not eliminate Jackson as a contributor. Pugh concluded that it was between 950 quadrillion and 1.4 quintillion times "more likely that [the] DNA profile originated from . . . Jackson and two unknown unrelated individuals" than from "three completely unknown individuals." Although she could not classify him as a "major contributor" under DFS protocols,[1] Pugh determined that Jackson was the "primary contributor" to the DNA mixture because his DNA types "were consistent with what was more the predominant profile in the mixture."

Pugh explained that DFS reports do not include a determination of the "primary contributor." She also testified that DNA can be transferred by touch and, the more touch or contact a person has with another individual or item, the more DNA can be transferred. Pugh opined that holding an object is a "better way to transfer DNA" than a secondary transfer method, and a person's DNA was more likely to be on an item if the person touched it versus touching something that later touched the item. She also stated that she would expect the primary contributor to have handled the item.

At the close of the Commonwealth's case, Jackson moved to strike the evidence. He argued that the DNA was the only evidence tying him to the firearm seized during the search, and because the forensic reports and testimony could not conclusively rule out a secondary transfer, the evidence did not prove he possessed the firearm. He also asserted that there was no evidence that the social media picture depicted actual firearms instead of "costume" guns. The court denied Jackson's motion.

Testifying for the defense, Allison stated that she and Jackson married on December 1, 2022, but he was not living in the apartment when officers searched it on December 14. She

---

[1] According to DFS protocols, a person can only be categorized as a major contributor if his or her DNA makes up approximately two-thirds or more of the DNA mixture.

stated that she lived there with her six-year-old daughter, and Jackson lived with his mother in a neighboring apartment building. Allison maintained that she used the spare room to tattoo clients and the mail that officers found came from Jackson's brother, who obtained it from one of Jackson's previous addresses. Allison admitted that Jackson spent "a lot" of time at the apartment and in the spare bedroom, where he would play video games or "mind his business while [she] did [her] tattoos." She testified that the social media picture was from Halloween 2022, when she and Jackson dressed in costume as an officer and robber with plastic toy guns.

Allison claimed that she owned the firearm found by the officers and, during the January 2023 search, she told them it belonged to her. She normally kept the gun in a lock box in a bedroom or on her person. She stated that she was "not sure" why the gun was found on the floor and said, "It was just in [her] room and [she] left and didn't think to put it up anywhere." Allison testified that she never saw Jackson handle the gun. According to Allison, Jackson did not know she owned the gun, let alone where she kept it.

When cross-examined about her prior statements to police, Allison denied that she told officers during the January 2023 search that Jackson previously possessed the gun. Rather, she claimed she had asked hypothetically whether Jackson could possess the gun if someone was banging on their door, covering the peephole, and they were scared.

In rebuttal, Special Agent Clifton testified that during the January 2023 search, he asked Allison if Jackson ever possessed the gun. Allison answered yes. She told Special Agent Clifton that one night someone knocked on their door, covered the peephole, and Jackson had the gun in his possession for protection.

At the close of all evidence, Jackson renewed his motion to strike. He reiterated that the Commonwealth did not prove that the social media photo depicted a real firearm, and he argued

that Allison's testimony supported the conclusion that the DNA on the gun came from a secondary transfer. The court denied Jackson's motion, and the jury convicted him.

STANDARD OF REVIEW

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).

The only relevant question for this Court "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "When circumstantial evidence is involved, the evidence as a whole must be 'sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). The reasonableness of a defendant's hypothesis of innocence "is itself a question of fact, and thus, the fact finder's determination regarding reasonableness 'is binding on appeal unless plainly wrong.'" *Id.* at 28 (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal

unless plainly wrong.'" *Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc) (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011)).

ANALYSIS

It is unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm."[2] Code § 18.2-308.2(A)(i). "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). To establish constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances [that] tend to show that the defendant was aware of both the presence and character of the [firearm] and that it was subject to his dominion and control." *Terlecki v. Commonwealth*, 65 Va. App. 13, 24 (2015) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). Moreover, occupancy of premises where contraband is found "is a circumstance that may be considered together with other evidence tending to prove" that a defendant "exercised dominion and control over [the] item[]" there and thus that he "constructively possessed the contraband." *Redmond v. Commonwealth*, 57 Va. App. 254, 264-65 (2010) (quoting *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992)). Possession need not be exclusive; it may be "joint or several." *Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009) (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)).

We do not distinguish between direct and circumstantial evidence. *Rams*, 70 Va. App. at 27. Nor do we view pieces of circumstantial evidence "in isolation," as "the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable

---

[2] Jackson does not dispute that he previously had been convicted of a felony. He challenges only the proof of actual or constructive possession and does not challenge the "knowingly and intentionally" elements of the offense.

- 6 -

[fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Id.* (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "[T]he evidence as a whole must be 'sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Id.* (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). The Commonwealth does not have to exclude every hypothesis of innocence, only those that "flow from the evidence." *Maust*, 77 Va. App. at 700 (quoting *Dowden*, 260 Va. at 468). "By finding the defendant guilty, therefore, the [fact finder] 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Rams*, 70 Va. App. at 28 (alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). Moreover, "[t]he trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." *English v. Commonwealth*, 43 Va. App. 370, 371 (2004) (citation omitted).

Jackson argues that the only evidence connecting him to the firearm is the DNA evidence, which is insufficient to prove he possessed the firearm. Contrary to Jackson's assertion, the DNA evidence was one piece of evidence among many that Jackson possessed the firearm. *See Rams*, 70 Va. App. at 27 (stating that an appellate court considers the evidence as a whole). Jackson spent extensive time in the apartment and the bedroom where police officers found the firearm. His marriage certificate was in the living room, and officers discovered mail addressed to Jackson and men's apparel and shoes in the same bedroom as the firearm. Allison's testimony further connected Jackson to the bedroom. She explained that Jackson spent "a lot" of time there, including playing video games while she did her tattoo work. The jury could consider these circumstances as establishing that Jackson exercised dominion and control over items in the apartment and he thus constructively possessed the firearm. *Garrick*, 303 Va. at 185-86 (considering factors such as frequency and extent of a defendant's occupancy in analyzing whether he constructively

possessed contraband); *Redmond*, 57 Va. App. at 264-65 (considering occupancy of premises where contraband is discovered as a factor in determining constructive possession).

The DNA evidence was additional proof that Jackson possessed the firearm. Pugh testified that Jackson was the primary contributor to the DNA mixture. She calculated that it was significantly more likely that Jackson was one of the three contributors than it was that the DNA came from three unknown persons. Pugh also stated that DNA was more likely to be left on an item a person directly handled, rather than through a secondary transfer, and she would expect a primary contributor to have directly handled an item.

Further, Jackson's hypothesis of innocence—that a secondary transfer deposited his DNA on the firearm—finds no basis in the record. Although Pugh testified in the abstract that secondary transfer is a possible mechanism for DNA to be deposited on an item, no testimony or other evidence connected the theoretical possibility to this case. Thus, his alternate hypothesis does not "flow from the evidence," and the Commonwealth did not need to exclude the possibility of secondary transfer. *Maust*, 77 Va. App. at 700 (quoting *Dowden*, 260 Va. at 468). By finding Jackson guilty, the jury therefore determined "by a process of elimination that the evidence [did] not contain a reasonable theory of innocence." *Rams*, 70 Va. App. at 28 (quoting *Haskins*, 44 Va. App. at 9). Because this factual determination was not plainly wrong, it is binding on appeal. *See id.*

Finally, Allison's testimony provided additional evidence that Jackson possessed the firearm. Although Allison claimed that the firearm belonged to her and she was "[e]xtremely" careful about keeping it away from Jackson, she admitted that she did not know how the firearm wound up on the floor of the spare bedroom when she did not leave it there. In convicting Jackson, the jury necessarily found that Allison's testimony distancing Jackson from the firearm was not credible, while crediting other parts of her testimony that linked Jackson to the apartment and

bedroom. Likewise, the jury could have reasonably concluded that the guns depicted in the social media photograph were "toy guns" but that other evidence, as delineated above, proved Jackson possessed the firearm. *English*, 43 Va. App. at 371. Moreover, Allison's testimony was impeached by her prior statement to police that Jackson had possessed the firearm. Although not affirmative evidence, the prior inconsistent statement provided the jury further reason to doubt Allison's credibility. *See* Va. R. Evid. 2:607(a)(vi); *see also Hall v. Commonwealth*, 233 Va. 369, 374 (1987) (allowing prior inconsistent statements for impeachment purposes "to affect the credibility of the witness" but not as "proof of the truth of their content"). We will not disturb the jury's credibility determination, which was not plainly wrong. *Maust*, 77 Va. App. at 703; *English*, 43 Va. App. at 371. Additionally, Allison's ownership or possession of the firearm would not negate Jackson's possession, as "[p]ossession may be joint or several." *Smallwood*, 278 Va. at 631 (quoting *Burnette*, 194 Va. at 792).

The record contains sufficient evidence that Jackson possessed a firearm in violation of Code § 18.2-308.2(A)(i). Accordingly, the court did not err by denying Jackson's motion to strike the evidence.

## CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*